## PEOPLE v LEWIS

Docket No. 92282. Submitted March 19, 1987, at Lansing. Decided July 22, 1987.

Mann Lewis, Jr., was convicted following a jury trial in Bay Circuit Court of first-degree criminal sexual conduct. Defendant thereafter pled guilty to being an habitual offender, fourth offense. The trial court, John X. Theiler, J., sentenced defendant to from fifteen to thirty years imprisonment. Defendant's delayed application for leave to appeal was denied by the Court of Appeals. The Supreme Court, on defendant's application for leave to appeal to the Supreme Court, thereafter remanded the case to the Court of Appeals for consideration as on leave granted. 425 Mich 854 (1986).

The Court of Appeals *held:*

1. The magistrate did not err in granting a continuance of the preliminary examination. The unexpected change in the complainant's testimony constituted good cause for a continuance.

2. The length of the continuance was agreed to by defense counsel. Defendant was not caused undue hardship because of the delay.

3. A change of venue was unnecessary. There was no reasonable likelihood that defendant would not receive a fair trial as a result of local newspaper articles about defendant's case. There was no finding of a strong community feeling or a bitter prejudice against the defendant.

4. Defendant's assertion of error in certain jury instructions given by the trial court was deemed to be without merit.

5. The admission of testimony by a forensic serologist, even if

REFERENCES

Am Jur 2d, Criminal Law §§ 192 *et seq.*; 266 *et seq.*; 411 *et seq.*

Am Jur 2d, Evidence §§ 103 *et seq.*

Am Jur 2d, Venue §§ 48 *et seq.*

Propriety, under statute enhancing punishment for second or subsequent offense, of restricting new trial to issue of status as habitual criminal. 79 ALR2d 826.

Construction and effect of statutory provision for change of venue for the promotion of the convenience of witnesses and the ends of justice. 74 ALR2d 16.

erroneous, was harmless beyond a reasonable doubt. Defendant failed to object to the introduction of such testimony and there was no manifest injustice.

6. Defendant did not object to the prosecutor's questioning of his alibi witnesses concerning their failure to tell the police information which was exculpatory to defendant and so failed to invoke the judge's discretion in regard to such questioning. The prosecution did not lay a foundation showing why it would have been natural for the alibi witnesses to relate their story to the police, however, as there was no objection and no apparent prejudice from the failure to lay the foundation, the Court of Appeals declined to reverse on this basis.

7. It was proper to sentence defendant as a fourth-offense habitual offender even though two of his prior felony convictions arose out of a single transaction.

Affirmed.

E. A. QUINNELL, J., concurred separately to note that the blood-typing evidence in this case was properly admitted. It is his belief that the admission of such evidence is not error when there is other competent evidence linking the defendant to the crime, when the jurors have been properly cautioned about the use of such evidence in their deliberation, and when a proper foundation has been laid for admission of such evidence.

1. CRIMINAL LAW — PRELIMINARY EXAMINATIONS — CONTINUANCES.
A magistrate may not grant a continuance of a preliminary examination except for good cause shown (MCL 766.7; MSA 28.925).

2. VENUE — CHANGE OF VENUE.
Venue of a criminal case may be changed upon good cause shown by either party (MCL 762.7; MSA 28.850).

3. VENUE — CHANGE OF VENUE.
A motion for a change of venue is addressed to the trial court's discretion, the exercise of which will be overturned on appeal only on a finding of abuse; it is not an abuse of discretion to defer determination of a request for a change of venue until jury selection has been attempted in the original county.

4. VENUE — CHANGE OF VENUE.
The existence of pretrial publicity does not, standing alone, require a change of venue; a change is not necessary if the jurors are able to set aside their impressions or opinions and render a verdict based upon the evidence adduced at trial; a change of venue is proper only where there is a finding of a

strong community feeling or a bitter prejudice against the defendant.

5. CRIMINAL LAW — EVIDENCE — BLOOD-TYPING EVIDENCE.

Objections to the introduction of blood-typing evidence in a trial for first-degree criminal sexual conduct cannot be raised for the first time on appeal absent a showing of manifest injustice; the introduction of such evidence, even if erroneous, may be found to be harmless error beyond a reasonable doubt where the evidence went to prove the identity of the perpetrator, the major issue at trial, and there was direct testimony from the complainant that defendant was the perpetrator.

6. CRIMINAL LAW — WITNESSES — ALIBI WITNESSES — IMPEACHMENT.

An alibi witness may not be discredited by insinuating his failure to be a good citizen on the basis of his failure to come forward; however, the credibility of an alibi witness may be attacked by showing that he failed to speak or act when it would have been natural to do so if the facts were in accordance with his testimony.

7. CRIMINAL LAW — WITNESSES — ALIBI WITNESSES — IMPEACHMENT.

There must be some showing on the record as to why it would have been natural for an alibi witness to relate his story to the police before the prosecutor is allowed to impeach the witness for failure to come forward and tell his story to the police before trial.

8. CRIMINAL LAW — SENTENCING — HABITUAL OFFENDERS.

It is proper to convict a criminal defendant as a fourth-offense habitual offender where some of the prior offenses arose out of the same transaction; the statute pertaining thereto mandates enhanced sentencing if the defendant has been convicted of three or more felonies (MCL 769.12; MSA 28.1084).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Martha G. Mettee,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Derrick A. Carter),* for defendant on appeal.

Before: MacKenzie, P.J., and Beasley and E. A. Quinnell,* JJ.

Per Curiam. Defendant, Mann Lewis, Jr., was convicted by a jury of first-degree criminal sexual conduct, contrary to MCL 750.520b; MSA 28.788(2). Defendant later pled guilty to being an habitual offender, fourth offense, contrary to MCL 769.12; MSA 28.1084. On May 4, 1983, he was sentenced to serve not less than fifteen nor more than thirty years in prison, the sentence to run consecutive to a recently imposed felony sentence in another county. Defendant made a delayed application for leave to appeal, which this Court denied. However, on application for leave to appeal, the Supreme Court remanded the case to this Court for consideration as on leave granted.[1] Defendant raises six issues, each of which we address in turn.

Defendant's first claim of error stems from the continuance of the preliminary examination. The original preliminary examination was held on November 24, 1982, within the twelve-day period required under MCL 766.4; MSA 28.922. The only witness at this examination was the twelve-year-old complainant, who stated that she did not recognize defendant as being the man who had sex with her and even went so far as to refuse to look around the courtroom to see if she saw the perpetrator there. She expressed her unwillingness to come to court, using profanity. She said that the perpetrator had different hair and a different complexion than did defendant, but did say that she knew the perpetrator as "Junior." The prosecutor said that, "to put it mildly," he was surprised by the complainant's testimony and asked for a continuance so that he could bring in other witnesses.

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] People v Lewis, 425 Mich 854; 385 NW2d 267 (1986).

He also said that he believed that defendant and others had been intimidating and threatening the complainant to keep her from testifying. Defense counsel asked for a dismissal of the charge on the ground that there was no identification of defendant as the perpetrator. The magistrate said that there were other eyewitnesses who could testify and that this witness was "not about to testify very much about who the individual is." The magistrate declined to dismiss the charge without hearing further testimony and continued the examination to December 7, 1982. The magistrate also substantially reduced defendant's bond from $50,000 to $5,000.

On December 14, 1982, the magistrate informed defendant that his counsel and the prosecutor had agreed on another date for the continuation of the preliminary exam. The examination was resumed on January 14, 1983. There, the complainant identified defendant and stated that she had been intimidated and was tired of lying. Her friend, Angie Gettis, also twelve years of age, who was driving with the perpetrator and complainant prior to the incident, did not identify defendant. The magistrate concluded that complainant had been lying during her earlier testimony and was telling the truth at the later examination and, consequently, bound defendant over for trial.

Defendant argues that the magistrate abused his discretion in granting the continuation of the preliminary examination.[2] MCL 766.7; MSA 28.925 provides that a magistrate may not grant a continuance of a preliminary examination except for good cause shown. The same statute provides that a magistrate may not continue an examination by consent of the prosecution and defense unless "it

---

[2] If defendant had any objection to the proceeding in district court, he might have moved to quash.

shall clearly appear by a sufficient showing to the magistrate to be entered upon the record that the reasons for such consent are founded upon strict necessity and that the examination of the cause cannot then be had, or a manifest injustice will be done." "Good cause shown" has been interpreted to include the unavailability of prosecution witnesses because they were needed in federal court, because they were police officers on vacation,[3] or because they were hospitalized.[4] Further, the failure of the magistrate to place upon the record the reasons for delay establishing "good cause" is harmless error where the reasons and their sufficiency are self-evident from the record.[5]

It is obvious from the record that the prosecutor expected to need to present only the complainant as a witness and was greatly surprised by complainant's recalcitrance. While it probably would have been better for the prosecutor to have had his other witnesses available at the first preliminary examination, the unexpected change in complainant's testimony constituted good cause for a continuance. The magistrate did not err in granting the continuance.

Defendant also complains that the continuance caused him undue hardship because of the long delay. The record discloses, however, that even the length of the original continuance, to December 7, 1982, from November 24, 1982, was due to defense counsel's unavailability on an earlier date. The later extension of the continuance was agreed to by defense counsel as well. There was no error in denying defendant's effort to take advantage of the court's grant of the continuance to defense counsel.

---

[3] *People v Horne,* 147 Mich App 375; 383 NW2d 208 (1985), lv den 425 Mich 877 (1986).

[4] *People v Buckner,* 144 Mich App 691, 694; 375 NW2d 794 (1985).

[5] *Id.* at 694-695.

Defendant's second claim of error stems from four articles about the case appearing in local newspapers. The longest of these articles was only 150 words in length, and the most recent had been published on January 18, 1983, a full ten weeks prior to the start of trial. The trial court declined to grant defendant's pretrial motion for a change of venue because of the articles, saying "We'll see if we can get a proper jury." The court noted that the articles were short and were not of such a nature that they would tend to inflame the community, although they did contain some material which the court felt was inappropriate for the jury. Defendant asserts both that he should have been granted a change of venue and that the trial judge erroneously refused to ask the jurors about the articles during voir dire.

Contrary to defendant's latter assertion, the trial court did question the jury panel in more than a cursory fashion to determine whether they had seen the articles. He described the articles in sufficient detail for any prospective juror to know whether he had seen them before and then twice asked the panel whether any of them had seen the articles. There was no response. The court also noted that there were errors in the articles, particularly the use of the word "rape," which was emotionally charged as well as legally inaccurate. Defense counsel expressed no dissatisfaction with the jury selected.

Venue of a criminal case may be changed upon good cause shown by either party.[6] A motion for change of venue is addressed to the trial court's discretion, the exercise of which will be overturned on appeal only on a finding of abuse. It is not an abuse of discretion to defer determination of a

---

[6] MCL 762.7; MSA 28.850.

request for change of venue until jury selection has been attempted in the original county; on the contrary, it is considered to be a preferable practice. Further, the existence of pretrial publicity does not, standing alone, require a change of venue. If jurors are able to set aside their impressions or opinions and render a verdict based upon the evidence adduced at trial, a change of venue is not necessary. A change of venue is proper only where there is a finding of a strong community feeling or a bitter prejudice against the defendant.[7]

Defendant urges upon us a standard under which a change of venue would be required if there were circumstances such that there was a reasonable likelihood that he would not receive a fair trial. Even under this standard, however, a change of venue is unnecessary here. The trial court asked the jurors whether they had seen the articles complained of and received no answer. The court went out of its way to point out that the articles may have contained unfair representations of the facts. The articles were very simple and straightforward and not sensationalistic. There were only four articles, the last of which was published ten weeks prior to trial. There simply is not a reasonable likelihood that defendant would not receive a fair trial on these facts.

Defendant asserts error in the following instruction given by the trial court during its pretrial remarks:

> You decide what occurred. And having determined what occurred, then I will have given you the law that applies to those facts so that you will then be able to make a decision as to what the proper verdict is. Now, you have no right to inter-

[7] *People v Jancar,* 140 Mich App 222, 229-230; 363 NW2d 455 (1985).

fere in my function. For example, you have an obligation and you—your oath will obligate you to take the law as I give it to you, to follow the law. Now, that isn't a contention on my part that I'm infallible, that I don't make mistakes. But if I do, that mistake can be corrected. But if a jury doesn't follow our instructions, there could be a miscarriage of justice that could result in something improper being done that could not be corrected. I have no right to interfere in your function, and that function being, for example, to determine what the facts are. And I make a studied effort not to do that. You decide that.

Defendant says that by telling the jury that his own mistakes of law could be corrected, but that the jury's failure to follow his instructions could not, the trial judge was effectively telling the jury that they could allow an injustice to pass because it would be corrected. Defendant says that the instruction interfered with the jury's fact-finding function.

This contention is without merit. The above-quoted remarks contain nothing to reduce the jury's understanding of the gravity of its responsibility. It does not tell the jury that injustices will be corrected. It does not diminish the jury's fact-finding capacity. The cases cited by defendant do not apply because this was not a "duty-lifting" instruction.

Defendant's fourth claim of error stems from the introduction of the testimony of Robert Avery, a forensic serologist who had taken blood and body fluid samples from the defendant and compared them with samples of semen and vaginal fluids taken from complainant and her clothing following the incident. Avery determined that the assailant was of blood type A and secreted blood group substances into body fluids. Defendant was in-

cluded in the forty percent of the population that
were type A secreters. Avery said that the infor-
mation obtained from this type of test could not
determine whether two different samples came
from the same person. Defendant now challenges
the introduction of this evidence because it was
allegedly unreliable, prejudicial and of no proba-
tive value.

Defendant made no objection at trial to the
introduction of this evidence and admits as much
in his brief. Specific objections to the admission of
evidence cannot be raised for the first time on
appeal absent a showing of manifest injustice.[8]
There was no manifest injustice here. The evi-
dence went to prove the identity of the perpetra-
tor, the major issue at trial. At trial, there was
direct testimony from complainant that defendant
was the perpetrator. Thus, the introduction of the
blood-typing evidence, even if erroneous, was
harmless beyond a reasonable doubt.[9]

Defendant argues that it was improper for the
prosecutor to cross-examine alibi witnesses con-
cerning their failure to tell the police information
which was exculpatory to defendant. Defendant
presented five alibi witnesses. Pat Lewis, defen-
dant's fiancee at the time of the incident and his
wife at the time of trial, corroborated defendant's
own testimony that he had left home at about 7:00
the evening of the incident and returned at about
8:30 P.M. O'Dell Abraham, Eve Horn, Sibina Giles
and James Giles all testified that defendant had
been with them from about 7:00 P.M. until 8:00
P.M. the night of the incident. All five witnesses
said that defendant was wearing different clothes
than those described by the complainant as being

---

[8] *People v Federico*, 146 Mich App 776, 791; 381 NW2d 819 (1985).

[9] *People v Swinford*, 150 Mich App 507, 521; 389 NW2d 462 (1986).

worn by the perpetrator. The incident took place between 6:30 and 10:30 in the evening.

Contrary to defendant's assertion, the prosecutor did not extensively question the witnesses concerning their failure to come forward with information before trial. Sibina Giles was asked three questions concerning her failure to contact the police and her reluctance to talk to them. James Giles and Pat Lewis were each asked one question about their failure to come forward, and James Giles was also asked one question about his failure to mention the alibi evidence during his preliminary examination testimony. Defense witness Earline Giles was asked two questions about her failure to talk to the police, but she was not an alibi witness.

Defendant relies upon *People v Kraai*[10] for his argument that an alibi witness may not be cross-examined on his failure to inform the police of the alibi information. As this Court has pointed out before, however, that is not the holding of *Kraai*. *Kraai* stands for the proposition that an alibi witness may not be discredited by insinuating his failure to be a good citizen based on his failure to come forward. It does not forbid such cross-examination when good citizenship is not alluded to or suggested.[11] In *People v Lafayette*,[12] this Court reaffirmed the earlier holding of *People v McClow*[13] that the credibility of an alibi witness may be attacked by showing that he failed to speak or act when it would have been natural to do so if the facts were in accordance with his testimony. A trial court may exercise its discretion under the particular facts of a case. Here, as in *Lafayette*,

[10] 92 Mich App 398, 410-411; 285 NW2d 309 (1979).

[11] *People v Clifton Fuqua*, 146 Mich App 250, 256; 379 NW2d 442 (1985).

[12] 138 Mich App 380, 388-389; 360 NW2d 891 (1984).

[13] 40 Mich App 185, 193; 198 NW2d 707 (1972).

defendant did not object to the prosecutor's questions and so failed to invoke the trial court's discretion.

We do note that in *People v Clifton Fuqua,* 146 Mich App 250, 255-256; 379 NW2d 442 (1985), this Court adopted a rule that, before the prosecutor is allowed to impeach an alibi witness for failure to come forward and tell his story to the police before trial, there must be some showing on the record as to why it would have been natural for the alibi witness to relate his story to the police. No such foundation appears to have been laid in the trial court here. However, as there was no objection and no apparent prejudice from the failure to lay the foundation, we will not reverse on this basis.

Finally, defendant argues that he should have been sentenced as a third-offense habitual offender, rather than a fourth-offense offender, because two of his prior convictions arose out of a single transaction. That is, defendant's prior convictions of pandering and running a house of ill fame seem to stem from a single incident. In that incident, police officers entered a residence, were offered sex for an agreed price and observed defendant accepting the earnings of one of the prostitutes.

The habitual offender statute in question, MCL 769.12; MSA 28.1084, mandates enhanced sentencing if the defendant has been convicted of three or more *felonies.* The statute says "felonies," not "felonious transactions." In *People v Stoudemire,*[14] this Court held that it was proper to try a defendant as a fourth-offense habitual offender when some of the prior offenses arose out of the same transaction. In doing so, the *Stoudemire* panel specifically disagreed with the holding of *People v*

[14] 140 Mich App 687; 365 NW2d 214 (1985), lv gtd 422 Mich 974 (1985).

*Ross*[15] that when two prior felony convictions arose out of the same transaction, were provable by the same testimony and involved only one time and place, they were only one felony for purposes of the habitual offender statute. More particularly, the *Stoudemire* panel believed that the two Supreme Court cases relied upon by *Ross*[16] did not support the *Ross* holding.

We are inclined to agree with the *Stoudemire* reasoning on this issue. *Stoudemire* is currently before the Supreme Court and may possibly be reversed. Until and unless that happens, however, we will follow *Stoudemire* and hold that the language of the statute permits the sentencing of defendant as a fourth-offense habitual offender.

Affirmed.

E. A. QUINNELL, J. *(concurring)*. I concur separately in order to address the admissibility of blood or other serologic-typing evidence.

The admission of blood-typing evidence in this case was not error. Such evidence is generally held to be admissible.

> The forensic use of these tests arises principally in two areas-identifying the perpetrators of violent crimes or sexual offenses from traces of blood or semen and ascertaining parentage in child support cases or other litigation. In general, the courts have moved from an initial position of mistrust of such evidence to the present stage of taking judicial notice of the scientific acceptance or acceptability of serologic and related tests. It is recognized that if the suspect's antigens do not match those in the sample found at the scene of a crime, then the incriminating trace does not consist of his

---

[15] 84 Mich App 218, 223; 269 NW2d 532 (1978).

[16] *People v Lowenstein,* 309 Mich 94, 100-101; 14 NW2d 794 (1944); *People v Podsiad,* 295 Mich 541, 546; 295 NW 257 (1940).

blood. On the other hand, there is a difference of judicial opinion when it comes to evidence showing that there is a match. Since some combinations of antigens are relatively common, a few courts have dismissed the positive test results for these antigens as irrelevant. The better view-and the clear majority position-is that positive findings are neither irrelevant nor so innately prejudicial as to justify a rule against their admission. [McCormick, Evidence (3d ed), § 205, pp 618-619.]

Further, in this day of extensive publicity regarding organ transplants and rejection because of incompatible tissue types, it is safe to assume that the public is aware that rather sophisticated serologic typing is possible; and it is further safe to assume that some members of the jury will assume that blood-typing even as to bodily fluid stains can be accomplished. The prosecution must be allowed to introduce the blood-typing evidence in order to refute any inference the jury might draw from the absence of blood-typing evidence. Michigan Criminal Jury Instructions 3:1:04 or 3:1:05.

However, the admissibility of blood-typing evidence should be governed by standards announced most recently in *People v Trevino,* 155 Mich App 10, 15-16; 399 NW2d 424 (1986):

[W]e find that admission of the blood typing evidence is not error when there is other competent evidence linking defendant to the crime, when the jurors have been properly cautioned about the use of such evidence in their deliberations, and when a proper foundation has been laid for admission of such evidence.

As noted in the lead opinion, there was other competent evidence linking defendant to the crime

and the proper foundation was laid for the admission of such evidence.

The court in this case did not give any cautionary instructions, but that was unnecessary in view of the testimony of Robert Avery, the scientist who indicated that the blood tests established only that the defendant could not be eliminated as a perpetrator of the offense. In view of that testimony from the witness, a cautionary instruction from the court was not necessary since the testimony itself was so limited.

I do suggest that an appropriate cautionary instruction would inform the jury that the blood-type evidence was received for the limited purpose of showing only that the defendant could not be excluded as the perpetrator of the offense and also that the evidence has no value whatever in identifying any specific individual within the group of people having that same blood type.