PEOPLE v HARVEY

Docket No. 85696. Submitted February 11, 1988, at Grand Rapids.
Decided April 18, 1988.

Wayne L. Harvey was convicted of first-degree felony murder and
second-degree murder following a jury trial in Ingham Circuit
Court and was sentenced to life imprisonment on both convic-
tions, Michael G. Harrison, J. Defendant appealed.

The Court of Appeals *held:*

1. The trial court did not err in denying defendant's motion
for a change of venue. Defendant did not demonstrate a pattern
of strong community feeling or bitter prejudice against him
which would have warranted a change of venue.

2. The trial court did not abuse its discretion in not excusing
two jurors for cause on the ground that they had previous
knowledge of the case through pretrial publicity. Both jurors
stated that they could base their decisions strictly on the
evidence.

3. The trial court did not err in refusing defendant's request
for a continuance when one juror became ill and could not
attend trial. Defendant failed to establish that he suffered any
prejudice from dismissal of the juror.

4. The court did not err in permitting children of one of the
victims to testify regarding the discovery of their slain mother.
The testimony was not unfairly prejudicial since the children's
testimony in no way affected the jury to the point that the
jury's attention was diverted from the evidence and an objec-
tive appraisal of defendant's guilt or innocence.

5. Defendant's allegation that the prosecutor intentionally
coerced defense counsel to object to inadmissible hearsay and

REFERENCES

Am Jur 2d, Evidence §§ 251, 253, 260; Jury § 127; New Trial § 117;
Trial §§ 623, 713, 793, 918; Venue §§ 59, 60, 73.

Pretrial publicity in criminal case as ground for change of venue.
33 ALR3d 17.

Propriety and effect, in criminal case, of use of alias of accused in
instructions to jury. 87 ALR2d 1217.

See also the annotations in the Index to Annotations under Jury
and Jury Trial; Venue.

that defendant was denied a fair trial as a result is without merit. Defendant was not denied a fair and impartial trial.

6. Defendant's convictions were not against the great weight of the evidence. The evidence overwhelmingly established defendant's involvement in the killings.

7. The court's instructions to the jury did not remove the element of causation from the jurors' consideration. The court followed the appropriate Criminal Jury Instruction to the letter. No error resulted from the giving of the jury instructions.

8. Defendant was not denied a fair trial by the prosecutor's revealing, through testimony of a police officer, that defendant had used another name when arrested. Evidence of a defendant's use of an alias is admissible to show his identity.

9. No error occurred as a result of the fact that a police officer testified that defendant's accomplice had killed two people. Defendant suffered no prejudice due to the remarks.

Affirmed.

1. CRIMINAL LAW — VENUE — CHANGE OF VENUE — JURY SELECTION.
   It is not an abuse of discretion to defer determination of a request for change of venue until jury selection has been attempted in the original county; on the contrary, it is considered to be a preferable practice.

2. CRIMINAL LAW — VENUE — CHANGE OF VENUE — PRETRIAL PUBLICITY.
   The existence of pretrial publicity does not by itself require a change of venue; a change of venue is not necessary even though jurors have been exposed to adverse publicity and hold preconceived notions of guilt or innocence if they can lay aside their impressions or opinions and render a verdict based on the evidence presented in court.

3. CRIMINAL LAW — VENUE — CHANGE OF VENUE.
   A defendant seeking a change of venue has the burden of demonstrating the existence of actual prejudice or the presence of strong community feeling or a pattern of deep and bitter prejudice so as to render it probable that the jurors could not set aside their preconceived notions of guilt, notwithstanding their statements to the contrary.

4. CRIMINAL LAW — VENUE — LOCAL PREJUDICE — APPEAL.
   The totality of the circumstances, including the content of news accounts and the voir dire examination transcript, should be evaluated on appeal in deciding whether a defendant was deprived of a fair and impartial trial due to local prejudice.

5. Criminal Law — Jury — Publicity.

Knowledge of publicity concerning a criminal case does not automatically render a juror unfit to serve unless the juror has a preconceived opinion regarding the defendant's guilt or innocence which cannot be put aside.

6. Trial — Continuances — Appeal.

There are five factors which must be considered when determining whether a trial court abused its discretion in denying a defendant's request for a continuance: (1) was the defendant asserting a constitutional right; (2) was there a legitimate reason for asserting the right; (3) is the defendant guilty of negligence; (4) were prior adjournments of trial at the behest of the defendant; and (5) will prejudice to the defendant result from an abuse of discretion by the trial court in refusing the defendant's request for a continuance.

7. Criminal Law — Jury — Number of Jurors.

A trial judge has broad discretion to empanel a jury of not less than twelve nor more than fourteen jurors and to reduce the number to twelve (MCL 768.18; MSA 28.1041).

8. Evidence — Prejudice — Unfair Prejudice — Rules of Evidence.

The concept of "unfair prejudice" as incorporated in the rule of evidence which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice involves more than that the evidence is "damaging" to a party's case; prejudice arises where there exists a danger that evidence which is minimally relevant when evaluated in a logical manner may be given weight by a jury substantially out of proportion to its logically damaging effect; unfair prejudice arises where the admission of prejudicial evidence would be inequitable (MRE 403).

9. Criminal Law — Prosecutorial Misconduct — Appeal.

The test of whether prosecutorial misconduct requires reversal is whether the defendant was denied a fair and impartial trial.

10. Criminal Law — New Trial — Appeal.

The question of whether a conviction is against the great weight of the evidence generally involves issues of credibility or circumstantial evidence; the Court of Appeals in reviewing the denial of a motion for a new trial based upon such a claim looks to whether there was an abuse of discretion in denying the motion for a new trial rather than to resolving credibility issues anew; an abuse of discretion will be found only where

the trial court's denial of the motion was manifestly against the clear weight of the evidence.

11. CRIMINAL LAW — JURY INSTRUCTIONS — PRESERVING QUESTION.

Alleged errors in jury instructions are deemed waived in the absence of an objection unless a miscarriage of justice would result; a miscarriage of justice occurs when the erroneous or omitted instructions pertain to a basic and controlling issue in the case.

12. CRIMINAL LAW — JURY INSTRUCTIONS.

No error results if jury instructions given are somewhat imperfect so long as they fairly present to the jury the issues to be tried and sufficiently protect the rights of the defendant.

13. CRIMINAL LAW — JURY INSTRUCTIONS.

Jury instructions must include all elements of the crime charged and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them.

14. EVIDENCE — ALIASES.

Evidence of a defendant's use of an alias is properly admissible into evidence to show the defendant's identity.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Donald E. Martin,* Prosecuting Attorney, and *Robert E. Ebersole,* Chief Appellate Attorney, for the people.

*Matthew Posner,* for defendant on appeal.

Before: CYNAR, P.J., and WEAVER and R. M. PAJTAS,* JJ.

CYNAR, P.J. Following a jury trial in Ingham Circuit Court, on April 26, 1985, defendant was convicted of first-degree felony murder, MCL 750.316; MSA 28.548, and second-degree murder, MCL 750.317; MSA 28.549. Defendant was sentenced to life imprisonment on both convictions. He appeals as of right raising eight issues. We affirm.

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant's convictions arose out of the October 25, 1984, shooting deaths of East Lansing Police Officer James S. Johnson and homemaker Connie J. Sonnenberg. Defendant and his codefendant, Patricia Louise Ware, were arrested for the shootings.

Ware had been employed as a housekeeper for William Lewis, a resident at a senior citizens apartment building located at 1801 North Hagadorn Road, Apartment 203 in East Lansing. Lewis' car had been stolen earlier and was located by East Lansing Police Officer Dennis Aven in the parking lot of a shopping center near the apartment building. Officer Johnson went to Lewis' apartment and was let in by the building manager, Lawrence Helmer. Ware was in the apartment and Johnson ordered her to sit down. While Johnson was attempting to use the telephone, Ware tried to leave three or four times. As she tried leaving, Johnson grabbed her arm. At that point, Helmer closed the apartment door to prevent her from leaving. Helmer then heard struggling inside the apartment. At that moment, Helmer left and went into apartment 207. As he was entering apartment 207, he heard a gunshot, as did another resident. He then looked out of the peephole of apartment 207 and saw Ware and another person running down the hall.

East Lansing Police dispatcher Greg Van Peenan answered Johnson's call. Johnson told him that Ware was at the apartment and requested assistance. Van Peenan heard people struggling and then the telephone went dead.

Several people testified to seeing a woman matching Ware's description and a man resembling defendant running down the hall of the apartment building, then outside, and down nearby Hart Street.

Johnson's body was later discovered lying on the floor by Helmer and the police officers who had responded to Johnson's earlier request for assistance.

A short time after the pair left the apartment building, they were seen running down Hart Street. Sonnenberg lived at 6071 Hart Street in Meridian Township. Sonnenberg was apparently talking on the telephone to a friend when she asked the friend to hold on while she checked a noise at the front door. The friend heard male and female voices and then the phone went dead.

Hart Street residents saw a black man come out of Sonnenberg's home and get into her car. A black man and a white woman were also seen driving Sonnenberg's car near the corner of Hagadorn Road and Birch Row where defendant and Ware were later arrested.

Sonnenberg's children, Michael and Kristen, testified over defense counsel's objection that they had seen their mother's car at the end of their street. Upon arriving home, they discovered their mother just inside the front door of their home. Kristen testified that she, Kristen, ran outside screaming. A neighbor, Alicia Caceras, telephoned the police.

Brian McDaniel, an expert in canine tracking, testified that his dog followed a scent from the apartment building on Hagadorn to Sonnenberg's home and then to her car where defendant and Ware were subsequently arrested.

Upon being arrested, defendant, while basically cooperative, shouted, "I didn't hurt anybody, I didn't kill anybody." Ware was uncooperative and fought with the police. Ware was carrying Sonnenberg's purse, which contained a handgun. The gun did not belong to Sonnenberg.

When defendant was booked, he gave his name as Rick Davis. Ware had introduced defendant to Lewis as Rick Davis.

Evidence was collected both from Lewis' apartment and Sonnenberg's house. A jacket with defendant's hair on it was found in the apartment bathroom. In the jacket pocket, there were .22 caliber bullets, the type used in the shootings. Defendant's fingerprints were found on a five-dollar bill and a package of cigarette papers that were also in the jacket pocket. Partial prints of defendant's shoes were found in the bathroom of the apartment. Fingerprints were found on Lewis' car matching those of Ware and defendant.

Ware had a powder burn below her waist. A bullet hole was discovered in the pocket of Ware's pants. Defendant had lead residue on the waistband of his pants and on his underwear.

An autopsy was performed on both victims. A bullet was removed from each of their heads. Firearms expert David Townshend compared test shots with the bullets taken from the victims and concluded that they probably came from the same gun.

Before trial, on November 30, 1984, defendant moved for a change of venue based on the publicity that the case had received. A supplemental affidavit was filed on February 25, 1985, containing numerous newspaper articles. The court denied the motion in an order filed March 22, 1985. In its bench opinion, the court stated that it was obligated under the law to first try to impanel an impartial jury. On March 28, 1985, defendant moved again for a change of venue. The motion was denied once more. The jury voir dire process was long and the trial judge conducted in chambers individual voir dire of each prospective juror who had heard of the case. Defense counsel made

a standing objection to seating any juror who had heard of the case.

After defendant was convicted for both shootings, he moved for a new trial claiming that his convictions were against the great weight of the evidence. The motion was denied in an order filed May 20, 1985. The instant appeal followed.

The first issue raised by defendant centers on whether the trial court erred in denying defendant's motion for a change of venue. Defendant argues that he did not have an impartial jury because there was a pattern of strong community feeling against him due to the extensive and inflammatory publicity preceding his trial. We disagree.

Venue of a criminal case may be changed upon good cause shown by either party. MCL 762.7; MSA 28.850. A trial court's determination on a motion for a change of venue is reviewed for an abuse of discretion. *People v Lewis,* 162 Mich App 558, 564; 413 NW2d 48 (1987); *People v Prast (On Rehearing),* 114 Mich App 469, 476; 319 NW2d 627 (1982). It is not an abuse of discretion to defer determination of a request for a change of venue until jury selection has been attempted in the original county; on the contrary, it is considered to be a preferable practice. *Lewis, supra,* pp 564-565.

The existence of pretrial publicity does not by itself require a change of venue. A change of venue is not necessary even though jurors have been exposed to adverse publicity and hold preconceived notions of guilt or innocence if they can lay aside their impressions or opinions and render a verdict based on the evidence presented in court. *Irvin v Dowd,* 366 US 717; 81 S Ct 1639; 6 L Ed 2d 751 (1961). The burden rests on the defendant to demonstrate the existence of actual prejudice or the presence of strong community feeling or a

pattern of deep and bitter prejudice so as to render it probable that the jurors could not set aside their preconceived notions of guilt, notwithstanding their statements to the contrary. *Sheppard v Maxwell,* 384 US 333; 86 S Ct 1507; 16 L Ed 2d 600 (1966). The totality of the circumstances, including the content of news accounts and the voir dire examination transcript, should be evaluated on appeal in deciding whether a defendant was deprived of a fair and impartial trial due to local prejudice. *People v Duby,* 120 Mich App 241, 246-247; 327 NW2d 455 (1982).

In this case, our careful review of the voir dire proceedings and the newspaper articles convinces us that defendant did not demonstrate a pattern of strong community feeling or bitter prejudice against him which would have warranted a change of venue. Several of the articles made no reference to defendant or to the murders, but referred solely to the nature of the criminal justice system in general. The others were more concerned about Ware's pretrial proceedings and trial, with mere reference of defendant as her codefendant. Arguably, the most prejudicial headline appeared to be, "Accused Cop Killer Wants Trial Moved From County." However, the article made no conclusions as to defendant's guilt. In fact, none of the articles made any such conclusions and mentioned only that defendant was accused or charged in the killings. In addition, the trial judge questioned in chambers each of the prospective jurors who had possibly heard of the case. We do not believe that the publicity was so extensive and inflammatory that the prospective jurors could not remain impartial. Therefore, defendant has not established error.

Next, defendant alleges error occurred when the trial judge failed to excuse two jurors for cause

since they had previous knowledge of the case through pretrial publicity. Defendant argues that jurors Jackson and Sklapsky should have been excused for cause because of their exposure to pretrial publicity. Defendant used all of his peremptory challenges in excusing the two jurors since the court refused to excuse them for cause.

Knowledge of publicity concerning a criminal case does not automatically render a juror unfit to serve unless the juror has a preconceived opinion regarding the defendant's guilt or innocence which cannot be put aside. MCL 768.10; MSA 28.1033; *People v Davis,* 122 Mich App 597, 602; 333 NW2d 99 (1983); *People v Dixon,* 84 Mich App 675, 680; 270 NW2d 488 (1978), lv den 405 Mich 837 (1979). The important inquiry in this area is whether both jurors believed that they could try the case impartially, even if they had previously formed opinions from exposure to publicity. *People v Schneider,* 309 Mich 158, 164; 14 NW2d 819 (1944).

In this case, both jurors specifically responded that they could base their decisions strictly on the evidence. Thus, we find no abuse of discretion in the trial court's decision not to excuse the jurors for cause. See also *People v Partee,* 130 Mich App 119, 127; 342 NW2d 903 (1983).

Next, defendant claims that the court erred in refusing defendant's request for a continuance when one juror became ill and could not attend trial. On the second day of trial, juror Morgan was excused from the jury because he had been admitted to the hospital with respiratory problems which required the care of a specialist. Defense counsel sought to adjourn the case because Morgan was one of three black jurors. The judge responded that defendant had a jury of his peers and that he could not justify the loss of time involved in waiting until Morgan became well.

The grant or denial of a continuance rests within the discretion of the trial court. Reversal is mandated only upon an abuse of discretion resulting in prejudice to the accused. *People v Bell,* 155 Mich App 408, 412-413; 399 NW2d 542 (1986). In reviewing this question, this Court must consider (1) whether defendant is asserting a constitutional right, (2) whether there is a legitimate reason for asserting the right, (3) whether defendant is guilty of negligence, (4) whether prior adjournments were at defendant's behest, and (5) whether prejudice will result to defendant. *People v Wilson,* 397 Mich 76, 81; 243 NW2d 257 (1976), reh den 397 Mich 962 (1976).

In this case, defendant was asserting his constitutional right to a jury trial. However, we do not find that the trial court abused its discretion in denying defendant's request for a continuance. MCL 768.18; MSA 28.1041 provides, in relevant part:

> Any judge of a court of record in this state about to try a felony case which is likely to be protracted, may order a jury impaneled of not to exceed 14 members, who shall have the same qualifications and shall be impaneled in the same manner as is, or may be, provided by law for impaneling juries in such courts. All of those jurors shall sit and hear the cause. Should any condition arise during the trial of the cause which in the opinion of the trial court justifies the excusal of any of the jurors so impaneled from further service, he may do so and the trial shall proceed, unless the number of jurors be reduced to less than 12.

The statute is intended to avoid mistrials in cases where one or more of the original jurors is necessarily discharged during the trial due to personal disability or legal disqualification. *People*

*v Van Camp,* 356 Mich 593, 605-606; 97 NW2d 726 (1959). Under the statute, broad discretion is given to the trial judge to empanel a jury of not less than twelve but not more than fourteen, with further discretion to reduce the number to twelve. *People v Bell,* 74 Mich App 270, 274; 253 NW2d 726 (1977).

In this case, the trial court's decision to dismiss juror Morgan was not arbitrary or an abuse of discretion. Juror Morgan was seriously ill and could not continue with the trial. Defendant has not established that he suffered any prejudice from the dismissal of this juror.

Defendant also complains that the court erred by permitting Sonnenberg's children to testify regarding the discovery of their slain mother. He claims that this evidence was more prejudicial than probative. The prosecutor sought admission of the children's testimony to show the jury "how close in time and space all of this was." The trial court agreed with the prosecutor. We concur in the trial court's ruling.

Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. MRE 401. Relevant evidence may nonetheless be excluded from trial "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

In *Scalfani v Peter S Cusimano, Inc,* 130 Mich App 728, 735-736; 344 NW2d 347 (1983), this Court defined "unfair prejudice":

"Unfair prejudice" does not mean "damaging."

*Bradbury v Ford Motor Co,* 123 Mich App 179, 185; 333 NW2d 214 (1983). Any relevant testimony will be damaging to some extent. We believe that the notion of "unfair prejudice" encompasses two concepts. First, the idea of prejudice denotes a situation in which there exists a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury. In other words, where a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect, a situation arises in which the danger of "prejudice" exists. Second, the idea of unfairness embodies the further proposition that it would be inequitable to allow the proponent of the evidence to use it. Where a substantial danger of prejudice exists from the admission of particular evidence, unfairness will usually, but not invariably, exist. Unfairness might not exist where, for instance, the critical evidence supporting a party's position on a key issue raises the danger of prejudice within the meaning of MRE 403 as we have defined this term but the proponent of this evidence has no less prejudicial means by which the substance of this evidence can be admitted.

The children testified about getting off the school bus near the apartment building on Hagadorn and going to their home in a matter of minutes. The boy stated that it took three to four minutes to walk home. This testimony was probative in showing the time it took to travel from the apartment building in East Lansing to Sonnenberg's home on Hart Street and the closeness, both in time and space, of the two crimes. We conclude that the testimony was not unfairly prejudicial since the children's testimony in no way affected the jury to the point that the jury's attention was diverted from the evidence and an objective appraisal of defendant's guilt or innocence. *People v*

*James Robinson,* 417 Mich 661, 664-665; 340 NW2d 631 (1983).

In his fifth claim of error, defendant alleges that the prosecutor intentionally coerced defense counsel to object to inadmissible hearsay, thereby denying defendant a fair trial. We find no merit to this claim.

During the investigation of the case, the police conducted a residue test on defendant's hands to determine whether he had recently fired a gun. The test was never completed because the type of gun used in the shootings would not have rendered any results. The prosecutor attempted to question several officers as to why the test was never completed. Defense counsel's objections on the basis of hearsay were repeatedly sustained by the trial court.

The test of whether prosecutorial misconduct requires reversal is whether the defendant was denied a fair and impartial trial. *People v Williams,* 162 Mich App 542, 548; 414 NW2d 139 (1987). Here, the prosecutor did ask questions calling for hearsay. The hearsay was not admitted. However, once a proper foundation was laid, the prosecutor received an answer to his question. The exchange that took place was part of the adversary system. We find that defendant was not denied a fair and impartial trial. The trial court advised the jury that both counsel would object and that the court would rule on these objections. The jury was not to concern itself with the objections and rulings or reflect badly on either party. Thus, we find no error. See *People v Philip Drake,* 142 Mich App 357, 360-361; 370 NW2d 355 (1985).

Defendant also claims that his convictions were against the great weight of the evidence since the evidence did not show beyond a reasonable doubt

that defendant either killed the victims or assisted Ware in the killings.

The question of whether a conviction is against the great weight of the evidence generally involves issues of credibility or circumstantial evidence. *People v McCumby,* 130 Mich App 710, 717; 344 NW2d 338 (1983), lv den 419 Mich 911 (1984). In reviewing this issue on appeal, the Court looks to whether there was an abuse of discretion in denying the motion for a new trial rather than to resolving credibility issues anew. *People v Atkins,* 397 Mich 163, 172; 243 NW2d 292 (1976). An abuse of discretion will be found only where the trial court's denial of the motion was manifestly against the clear weight of the evidence. *People v Ross,* 145 Mich App 483, 494; 378 NW2d 517 (1985).

In this case, there was no abuse of discretion. The evidence overwhelmingly established defendant's guilt as to his involvement in these killings. There were several pieces of physical evidence, including defendant's fingerprints, shoe prints, and clothing with lead residue. In addition, several eyewitnesses saw Ware and a man matching defendant's description at the apartment building and Sonnenberg's house. Moreover, defendant was found pushing Sonnenberg's car. All of this evidence indicates that the verdict was not against the great weight of the evidence.

Defendant also claims that the trial court erred in instructing the jury on the element of causation. There was no objection by defense counsel to the instructions as issued. In the absence of an objection, alleged errors in jury instructions are deemed waived unless a miscarriage of justice results. *People v Amos,* 163 Mich App 50, 55; 414 NW2d 147 (1987). A miscarriage of justice occurs when the erroneous or omitted instructions pertain to a basic and controlling issue in the case.

*People v Sherman Hall,* 77 Mich App 456, 462; 258 NW2d 517 (1977), lv den 402 Mich 909 (1978); *People v Lamar,* 153 Mich App 127, 136; 395 NW2d 262 (1986). Even though jury instructions are somewhat imperfect, there is no error if they fairly presented to the jury the issues to be tried and sufficiently protected the rights of the defendant. *People v Bender,* 124 Mich App 571, 574-575; 335 NW2d 85 (1983). We see no miscarriage of justice in the instructions that were issued. Our review of the instructions as a whole, *People v Barnett,* 163 Mich App 331, 337; 414 NW2d 378 (1987), convinces us that no error took place.

In *People v Reed,* 393 Mich 342, 349-350; 224 NW2d 867 (1975), cert den 422 US 1044, 1048; 95 S Ct 2660, 2665; 45 L Ed 2d 696, 701 (1975), our Supreme Court stated that the instructions to the jury must include all elements of the crime charged and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them.

In this case, the complained-of portion of the instructions reads as follows:

> Second, that his death was caused by the defendant; that is, that Officer James Johnson died as a result of a gunshot wound to the head.

The court gave a similar instruction for the charge of second-degree murder of Johnson and for both the felony-murder and second-degree murder charges for Sonnenberg. Each time the court followed with "if you find that the death was caused by the defendant . . . ." The court followed the standard instructions to the letter. See CJI 16:2:01. The jury was also provided with a copy of all the instructions. Contrary to defendant's claim, the trial court did not remove the element of causa-

tion from the jury. Defendant's reliance on *People v Allensworth,* 401 Mich 67; 257 NW2d 81 (1977), cert den 435 US 933 (1978), is misplaced. In *Allensworth,* the Supreme Court reversed the defendant's conviction for felony murder because the trial judge had removed the element of the felony and the element of death from the jury's consideration. No such error took place in our case.

Finally, defendant claims that he was denied a fair trial when the prosecution, through testimony of a police officer, revealed that defendant had identified himself by a different name when he was arrested. Evidence of a defendant's use of an alias is admissible to show his identity. *People v Mauch,* 23 Mich App 723, 727; 179 NW2d 184 (1970), lv den 384 Mich 765 (1970). Here, evidence of defendant's use of an alias was properly introduced since identification of the defendant was at issue because he had a fingerprint card with the name of Rick Davis and because he had been introduced to Lewis as Rick Davis.

Additionally, it was not error for Officer Huntley to testify that Ware had killed two people since defense counsel's theory throughout the trial was that Ware had been the killer. We recognize the general rule that prosecutors and police witnesses have a special duty not to venture into forbidden areas of testimony which may prejudice a defendant's case. *People v O'Brien,* 113 Mich App 183, 209; 317 NW2d 570 (1982). However, in this case we find no prejudice resulting from these remarks. Defendant has failed to establish error. His convictions are affirmed.

Affirmed.