# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
January 21, 2020

v

JEFFREY MARTIN SIX,

Defendant-Appellant.

No. 338238
Wayne Circuit Court
LC No. 16-001862-01-FH

Before: STEPHENS, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of uttering and publishing a false instrument, MCL 750.249, and receiving or concealing stolen property with a value of more than $1,000, MCL 750.535(2)(b). The trial court sentenced defendant to two years' probation. We find defendant's voir dire argument potentially dispositive and remand for the trial court to articulate its reasons for denying voir dire concerning anti-LGBT[1] bias.

## I. FACTS AND PROCEEDINGS

Defendant's convictions arise from a scheme to fraudulently use the bank account of an innocent third party, Forrest Health Services (Forrest Health), to make online payments of driver responsibility fees on the Michigan Department of Treasury's website. The online payments were made in substantially greater amounts than the amounts due. The overpayments were credited to the online accounts of the driver who was liable for the driver responsibility fee. Four such payments were made on July 9, 2014, including a payment of $15,000 for defendant, whose driver responsibility fee was $150, a payment of $50,500 for Gordon Orsette, and overpayments for two other persons. Orsette and defendant were involved in a same-sex relationship at the time the overpayments were made.

The overpayments for Orsette and the two other persons were reversed before they were credited toward their respective driver responsibility accounts. No refunds were issued for these three overpayments. However, the $15,000 payment was credited to defendant's driver

---

[1] LGBT refers to Lesbian, Gay, Bisexual and Transgender.

responsibility account, for which he owed a $150 fee. The payment was made from a Forrest Health account without that payer's authorization. The Department of Treasury later approved a refund payment to defendant for $14,850. Defendant cashed the check at a party store. In September 2014, Forrest Health notified the Department of Treasury that its account had been hacked. The state refunded the unauthorized $15,000 payment to Forrest Health and began an investigation of defendant's refund payment.

The defense theory at trial was that Orsette told defendant that he paid defendant's driver responsibility fee out of Orsette's own account, accidentally adding two zeros to the amount paid. Defendant testified at trial that he cashed the check and gave the proceeds to Orsette because he did not know that Orsette's online payment was fraudulent.

## II. JURY VOIR DIRE

Defendant first argues that he was denied a fair trial by the trial court's refusal to question prospective jurors during voir dire regarding any potential anti-LGBT bias. "The trial court has discretion in both the scope and the conduct of voir dire." *People v Tyburski*, 445 Mich 606, 619; 518 NW2d 441 (1994); MCR 6.412(C). Voir dire of prospective jurors is governed by MCR 6.412(C), which provides:

> (1) *Scope and Purpose.* The scope of voir dire examination of prospective jurors is within the discretion of the court. It should be conducted for the purposes of discovering grounds for challenges for cause and of gaining knowledge to facilitate an intelligent exercise of peremptory challenges. The court should confine the examination to these purposes and prevent abuse of the examination process.

> (2) *Conduct of the Examination.* The court may conduct the examination of prospective jurors or permit the lawyers to do so. If the court conducts the examination, it may permit the lawyers to supplement the examination by direct questioning or by submitting questions for the court to ask. On its own initiative or on the motion of a party, the court may provide for a prospective juror or jurors to be questioned out of the presence of the other jurors.

Our Supreme Court summarized the principles underlying voir dire in *Tyburski*, 445 Mich at 618, stating:

> A defendant who chooses a jury trial has an absolute right to a fair and impartial jury. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *People v. Miller*, 411 Mich. 321, 326, 307 N.W.2d 335 (1981). The purpose of voir dire is to elicit enough information for development of a rational basis for excluding those who are not impartial from the jury. *People v. Brown*, 46 Mich. App. 592, 594, 208 N.W.2d 590 (1973); *People v. Harvey*, 167 Mich. App. 734, 423 N.W.2d 335 (1988). In voir dire, meaning "to speak the truth," potential jurors are questioned in an effort to uncover any bias they may have that could prevent them from fairly deciding the case. It is the only mechanism, and the only safeguard a defendant has, for ensuring the right to an impartial jury. The

propriety of the voir dire in this case turns on whether potential jurors who have been exposed to pervasive and sensationalized media coverage can "speak the truth" about their own bias, or whether a trial court must elicit more than mere self-assessment in order to safeguard a defendant's right to an impartial jury.

Our Supreme Court has "long recognized the importance of a voir dire that allows the court and the parties to *discover hidden bias that would render a potential juror incompetent. Tyburski*, 445 Mich at 619 (emphasis added). "[A] trial court may not restrict voir dire in a manner that prevents the development of a factual basis for the exercise of peremptory challenges." *People v Taylor*, 195 Mich App 57, 59; 489 NW2d 99 (1992).

This case brings to this Court another example of the common trial practices of the side-bar and chambers' conferences, which often leave a gaping hole in the appellate record. The better practice is to memorialize those conferences on the record immediately after they occur. However, no contemporaneous record was made in this case.

At some point prior to the commencement of voir dire in this case, the parties and the court discussed the scope of voir dire. The only record of that discussion was the following statement made by counsel for the defendant after the jury was sworn:

> This is not to contradict or argue with you, your Honor, but I requested to do voir dire on LGBT issues. You denied me that opportunity. And I need [sic] make the record that at this point there could be a member of the American Family Association on this jury and I have no way of knowing that because of a lack of voir dire.

The judge conducted the voir dire in this case. There is no record of questions being submitted to him by either party. There was no interruption of the record during the very brief jury selection process for any side-bar conference. No questions were asked regarding LGBT issues.

This case pended for over a year between bind-over and trial. Early on, the defendant waived his right to a jury trial and the prosecution did not object. Numerous motions were filed and heard in this case. The issue of the defendant's intimate relationship with a significant witness was discussed during several of these motion hearings. The witness and the defendant, both male, at one time were in an intimate relationship. The defense frequently noted the tumultuous nature of the relationship including the issuance of PPO's. The judge cautioned that a portion of defense counsel's trial strategy, that asserted that it was the former partner and not the defendant who initiated the transactions, was not a legal defense to the charges. The pre-trial activity was such that the judge sua sponte revoked the defendant's jury waiver because the judge was concerned that he had heard too many factual assertions from the parties to be an appropriate trier of fact. No written motion concerning voir dire was filed. There was no stipulation between the parties as to the illegal theory, cases, or facts presented to the judge when the ruling to preclude LGBT questions was made. Neither party offered a synopsis of any reasons the trial judge gave for the preclusion of that area of questioning.

We are tasked with reviewing the record to determine if error was made, and if so, whether our review is abuse of discretion as articulated in *Tyburski* or a de novo review of a

claimed constitutional error. We are limited to the record before the trial judge at the time the ruling was made. MCR 7.210(A). The need for a record for review is implicit in the very definition of an abuse of discretion. "An abuse of discretion occurs when an unprejudiced person considering the facts upon which the decision was made would say that there was no justification or excuse for the decision." *City of Novi v Robert Adell Children's Funded Tr*, 473 Mich 242, 254; 701 NW2d 144 (2005).

On appeal, this Court must determine whether the trial court conducted "a sufficiently probing voir dire in order to uncover potential juror bias." *Tyburski,* 445 Mich at 609. Here, we have no record to analyze the trial court's decision to decline questioning regarding LGBT issues. Therefore, to engage in analysis at this point would be pure conjecture as to the factual or legal basis for the trial court's decision in this case. However, we do not have to be so constrained. It is a common and acceptable practice to afford the court and the parties the opportunity for a remand where a fulsome record can be developed for appellate review. MCR 7.211(C)(1)(a)(*ii*). Indeed, other courts have declined to speculate what a trial court's reasoning was or the facts and law upon which the ruling was based, and remanded the matter to the trial court. For example, a remand was ordered in *People v Konopka*, 309 Mich App 345, 359-360; 869 NW2d 651 (2015),where the Court noted, "[w]ithout a factual basis for the costs imposed, we cannot determine whether the costs imposed were reasonably related to the actual costs incurred by the trial court, as required by MCL 769.1k(1)(b)(*iii* )." In *Houston v Southwest Detroit Hosp*, the Court stated:

> We hesitate to go through this process since it is our view that this is the trial courts function in the first instance. We are confident that the trial judge can and will properly exercise his discretion under the guidelines set forth in this opinion if the matter is remanded to him for reconsideration. We believe that this process is required to be accomplished on the record for two reasons:
>
> 1. The court rule does not give the trial court unlimited discretion. Only those sanctions found to be just are permitted.
>
> 2. An appellate court cannot review a decision for abuse of discretion unless it knows how and why the discretionary decision was made. [166 Mich App 623, 631; 420 NW2d 835 (1987)].

See also *People v White*, 208 Mich App 126; 527 NW2d 34 (1994) (remanded to the circuit court for an explanation of its sentence); *Rittershaus v Rittershaus*, 273 Mich App 462; 730 NW2d 262 (2007) (remanded for the trial court to make specific findings concerning an established custodial environment); *People v Jackson*, 475 Mich 909; 717 NW2d 871 (2006) (remanded to the circuit court for an evidentiary hearing and additional findings regarding the admissibility of evidence); *Roman v Secy of State*, 213 Mich App 592; 540 NW2d 474 (1995) (remanded for a full hearing and for the circuit court to articulate its findings). Remand is a sound and rational process in light of the total failure of the trial court to preserve the record.

The gap in the record in this case is similar to the record void in *People v McKeever*, 497 Mich 1033; 863 NW2d 330 (2015), where the Supreme Court ordered a remand. In *McKeever*, a significant focus of the defendant's appeal was why Jennifer Craven, a purportedly important

witness, did not testify at trial. The defense alleged she was not called due to ineffectiveness of subsequently disbarred counsel. The Court of Appeals initially affirmed McKeever's conviction.[2] The Supreme Court ordered the matter remanded to the trial court to examine ineffective assistance of counsel issues including those related to Craven. *Id*.

After remand, the Court of Appeals described the process:

While the trial court on remand found that a ruling was made, the trial court was unable to determine why Craven was precluded from testifying. And indeed, there is no indication regarding what the basis for such a ruling may have been anywhere in the record. Defendant now contends that any such ruling was in error. There is simply no way to review the issue because the basis of the ruling is unknown. Under other circumstances, we would consider remanding the matter and instructing the trial court to explain the basis of the ruling. However, that possibility is foreclosed in this matter because the judge that presided over defendant's trial has retired from the bench and apparently has no memory of the case, nor does any other individual. It appears that remanding the matter for further factual development would be an exercise in futility. [*People v McKeever (After Remand)*, unpublished per curiam opinion of the Court of Appeals, issued May 25, 2017 (Docket No. 331594), p. 5 rev'd on other grounds 503 Mich 879; 918 NW2d 526 (2018).].

In this case, we know that the trial court disallowed any voir dire as to juror perception, bias, or experience with the LGBT community. We do not know the basis for that ruling nor what arguments, facts, and law were presented to the judge. Accordingly, we remand this case to the trial court for settlement of the record.

Remanded for further proceedings consisted with this opinion. We retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Kirsten Frank Kelly

---

[2] *People v McKeeve*r, unpublished per curiam opinion of the Court of Appeals, issued September 16, 2014 (Docket No. 315771).

# Court of Appeals, State of Michigan

# ORDER

People of the State of MI v Jeffrey Martin Six

Docket No. 338238

LC No. 16-001862-01-FH

Cynthia Diane Stephens
Presiding Judge

Kirsten Frank Kelly

Jonathan Tukel
Judges

Pursuant to the opinion issued concurrently with this Order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 56 days of the Clerk's certification of this order, and they shall be given priority on remand until after they are concluded. As stated in the accompanying opinion, we remand this case for the trial court to articulate its reasons for denying defendant voir dire to question the jury for any anti-LGBT bias.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

/s/ Cynthia Diane Stephens

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

January 21, 2020
Date

Chief Clerk