PEOPLE v SWINFORD

Docket No. 80316. Submitted December 9, 1985, at Lansing.—Decided
    April 8, 1986. Leave to appeal applied for.

Kenneth D. Swinford was convicted of assault with intent to
    commit criminal sexual conduct involving penetration and first-
    degree criminal sexual conduct following a jury trial in Ingham
    Circuit Court, Michael G. Harrison, J. Defendant appealed,
    claiming that there was insufficient evidence of a personal
    injury so as to raise third-degree criminal sexual conduct to
    first-degree criminal sexual conduct, that conviction of both
    assault with intent to commit criminal sexual conduct involv-
    ing penetration and first-degree criminal sexual conduct consti-
    tutes double jeopardy, that certain physical evidence should not
    have been admitted because it was the fruit of an unlawful
    seizure, and that the blood-type evidence should not have been
    admitted. *Held:*

    1. The evidence at trial was clearly sufficient to support a
    finding of a personal injury, since there was evidence, if be-
    lieved, from which the jury could properly find both a bodily
    injury and mental anguish. There was evidence that the com-
    plainant suffered for a period of time from neck spasms which
    were caused when she was choked during the assault and
    incurred vaginal tears and swelling caused by forceful inter-
    course. The evidence further showed that the assault caused
    the complainant to be so fearful that she took a pay cut so as to

REFERENCES

Am Jur 2d, Appeal and Error §§ 545 *et seq.*
Am Jur 2d, Evidence §§ 1170 *et seq.*
Am Jur 2d, Rape §§ 3, 20-24, 26, 32, 88.
Am Jur 2d, Searches and Seizures §§ 35-83.
Sufficiency of allegations or evidence of serious bodily injury to
    support charge of aggravated degree of rape, sodomy, or other
    sexual abuse. 25 ALR4th 1213.
What constitutes penetration in prosecution for rape or statutory
    rape. 76 ALR3d 163.
Validity of consent to search given by one in custody of officers. 9
    ALR3d 858.
See also the annotations in the ALR3d/4th Quick Index under
    Blood Test; Former Jeopardy.

avoid continued night work and the assault caused her marital problems requiring the help of a therapist.

2. While the instruction given by the trial court on mental distress was erroneous, that instructional error did not prejudice defendant.

3. The assault charge arose out of the defendants' action in running his car into complainant's car and causing complainant to lose control of her car and run off the road. Since this act was complete and temporally separate from the events that resulted in defendants' sexual penetration of the complainant, the crimes were separate and the separate convictions did not violate the constitutional prohibition against double jeopardy.

4. Defendant's allegation of error with respect to the information is not properly raised on appeal, since it was not raised in the trial court and there is no showing that the failure to hear it on appeal will result in a miscarriage of justice.·

5. The parking light from defendant's car was secured as a result of a consensual search. Defendant's allegation that his consent was coerced is without merit.

6. Even if admission of the blood-type evidence was erroneous, the error was harmless beyond a reasonable doubt since the conviction rested on the strength of the complainant's identification testimony and the testimony linking defendant's car to the scene of the crime.

Affirmed.

1. CRIMINAL LAW — APPEAL — SUFFICIENCY OF EVIDENCE — REASONABLE DOUBT.

The Court of Appeals, in reviewing a claim based on the sufficiency of the evidence, considers all the evidence in a light most favorable to the prosecution and will affirm if a rational trier of fact could find that all the elements of the crime were proven beyond a reasonable doubt.

2. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — PERSONAL EVIDENCE — SUFFICIENCY OF EVIDENCE.

Evidence of visible marks on the victim's neck that lasted several days and of vaginal tears and swelling which took up to two weeks to heal is sufficient to sustain a conviction for first-degree criminal sexual conduct on the theory of bodily injury (MCL 750.520b; MSA 28.788[2]).

3. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — MENTAL ANGUISH.

"Mental anguish" as used in the criminal sexual conduct statute means extreme or excruciating pain, distress, or suffering of

the mind (MCL 750.520a[j], 750.520b[1][f]; MSA 28.788[1][j], 28.788[2][1][f]).

4. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — MENTAL ANGUISH.

Proof at trial that as a result of an act of criminal sexual conduct the victim saw a therapist regularly, experienced marital problems and was so fearful of working at night that she relinquished her position on the night shift despite having to take a pay cut evidences sufficient manifestations of emotional trauma to allow a rational trier of fact to find beyond a reasonable doubt that the victim suffered mental anguish within the meaning of the criminal sexual conduct statute (MCL 750.520a[j], 750.520b[1][f]; MSA 28.788[1][j], 28.788[2][1][f]).

5. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — DISSIMILAR OFFENSES.

The constitutional prohibition against double jeopardy does not operate to bar prosecution of two dissimilar offenses that occur at separate times; even if the offenses share common elements or one constitutes a lesser offense of the other, there is no violation based on double prosecution if one crime is complete before the other takes place (US Const, Am V and Am XIV; Const 1963, art 1, § 15).

6. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — ASSAULT — INTENT — SEXUAL PENETRATION.

Conviction of assault with intent to commit criminal sexual conduct involving penetration requires proof of a specific intent to commit sexual penetration, while conviction of first-degree criminal sexual conduct does not require proof of that specific intent.

7. APPEAL — INFORMATIONS — PRESERVATION OF QUESTION.

An information cannot be challenged for the first time on appeal absent a miscarriage of justice (MCL 769.26; MSA 28.1096).

8. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW.

All evidence obtained in violation of the constitutional protection against unreasonable searches and seizures is inadmissible in court (US Const, Am IV; Const 1963, art 1, § 11).

9. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT.

A search and seizure made without a warrant is per se unreasonable unless shown to fall within one of the various exceptions to the warrant requirement; consent is one such exception.

10. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT — CONSENT.

The burden is on the prosecution, when it is alleged that a person

consented to a search and seizure made without a warrant, to prove by clear and positive evidence that the consent was unequivocal and specific, and freely and intelligently given; the validity of a consent is a question of fact to be decided upon the evidence and all reasonable inferences drawn from it, examining the totality of the circumstances.

11. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT.

A defendant's knowledge of his right to refuse to allow a search is but one factor to be considered in a hearing regarding the suppression of evidence obtained in a search made without a warrant.

12. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT — CONSENT.

A defendant's conduct, by itself, can, under proper circumstances, be sufficient to constitute consent to a search.

13. APPEAL — EVIDENCE — SUPPRESSION OF EVIDENCE.

A trial court's conclusion following a suppression hearing will not be overturned unless found to be clearly erroneous; that is, if the reviewing court is left with a definite and firm conviction that a mistake has been made.

14. CRIMINAL LAW — EVIDENCE — BLOOD-TYPE EVIDENCE.

Admission of blood-type evidence for the purpose of showing that a criminal defendant had the same blood type as the person committing a criminal sexual assault, even if error, is harmless error where the defendant's conviction rests upon the positive identification of defendant by the complainant and physical evidence placing the defendant's vehicle at the scene of the crime.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, and *Robert B. Ebersole,* Chief Appellate Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek),* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and T. M. BURNS and HOOD, JJ.

PER CURIAM. Defendant was convicted following

a jury trial of assault with intent to commit criminal sexual conduct involving penetration, MCL 750.87; MSA 28.282, and first-degree criminal sexual conduct, MCL 750.520b(1)(f); MSA 28.788(2)(1)(f). He appeals as of right.

According to the testimony at trial, the complainant finished her work shift at the U. S. Post Office in Lansing at 4:00 a.m. on November 26, 1983, and left for home. While driving in a rural area toward Mason in Ingham County, she noticed a car following closely behind her. She increased her speed to 80 to 85 miles per hour in an attempt to elude the vehicle. During this chase, the other car rammed the back of her car three or four times. She lost control of her car and spun off the road, finally coming to a halt 50 feet from the road in a field. At the same time a car turned about in a driveway and returned to her location.

A man, later identified as the defendant, exited from the car and approached the complainant. He grabbed her neck, choked her, stated that he was going to rape her and threatened to kill her.

The man pulled complainant into the back seat of the car and proceeded to commit various acts of criminal sexual conduct. After threatening to kill her, the man drove away in his car. The complainant sought assistance at a nearby farmhouse and was taken for a medical examination at Sparrow Hospital in Lansing.

I

Defendant's first argument on appeal is that there was insufficient evidence of personal injury to the complainant to elevate the crime to criminal sexual conduct in the first degree. This claim is without merit.

In reviewing a claim based upon the sufficiency

of the evidence, this Court must consider all the evidence in a light most favorable to the prosecution. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979). A verdict should be affirmed if a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

A person is guilty of third-degree criminal sexual conduct, MCL 750.520d(1)(b); MSA 28.788(4)(1)(b), if that person engages in sexual penetration of another through the use of force or coercion. This crime is elevated to first-degree criminal sexual conduct if force or coercion is used and the victim suffers personal injury. MCL 750.520b(1)(f); MSA 28.788(2)(1)(f). "Personal injury" is statutorily defined as *"bodily injury,* disfigurement, *mental anguish,* chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ". (Emphasis added.) MCL 750.520a(j); MSA 28.788(1)(j).

In the case at bar, the prosecution contends that the act of criminal sexual conduct was elevated to criminal sexual conduct in the first degree by the bodily injury and mental anguish suffered by the complainant. We agree.

The record indicates that the choking of complainant left visible handprints which lasted several days and caused the complainant to have muscle spasms in her neck. A pelvic examination performed directly after the rape revealed that parts of complainant's vaginal areas were swollen and torn and would take up to two weeks to heal. It was indicated that these tears were consistent with "very, very, very forceful intercourse".

This evidence was adequate to sustain a first-degree criminal sexual conduct conviction on the theory of bodily injury. See *People v Gwinn,* 111 Mich App 223, 239; 314 NW2d 562 (1981), *lv den* 417

Mich 949 (1983); *People v Hollis,* 96 Mich App 333, 337; 292 NW2d 538 (1980); *People v Kraai,* 92 Mich App 398; 285 NW2d 309 (1979), *lv den* 407 Mich 954 (1980).

Concerning the "mental anguish" factor, various panels of this Court have struggled to find a definition which would not render the statute impermissibly vague. Compare *People v Gorney,* 99 Mich App 199; 297 NW2d 648 (1980), *lv den* 410 Mich 911 (1981) (mental anguish must be extreme) with *People v Jenkins,* 121 Mich App 195; 328 NW2d 403 (1982) (mental anguish must be significant). Recently, our Supreme Court in *People v Petrella,* 424 Mich 221, 257; 380 NW2d 11 (1986), settled the matter by holding that the term "mental anguish" under the statute means "extreme or excruciating pain, distress, or suffering of the mind," and that this meaning does not render the term void for vagueness.

The Supreme Court also listed the following factors which may be considered in determining whether a victim has suffered mental anguish:

"(1) Testimony that the victim was upset, crying, sobbing, or hysterical during or after the assault.

"(2) The need by the victim for psychiatric or psychological care or treatment.

"(3) Some interference with the victim's ability to conduct a normal life, such as absence from the workplace.

"(4) Fear for the victim's life or safety, or that of those near to her.

"(5) Feelings of anger and humiliation by the victim.

"(6) Evidence that the victim was prescribed some sort of medication to treat her anxiety, insomnia, or other symptoms.

"(7) Evidence that the emotional or psychological effects of the assault were long-lasting.

"(8) A lingering fear, anxiety, or apprehension about

being in vulnerable situations in which the victim may be subject to another attack.

"(9) The fact that the assailant was the victim's natural father." 424 Mich 270-271.

The Supreme Court stressed that no single factor was controlling and that each case must be decided on its own facts. 424 Mich 270.

With these factors in mind, we note that, as a result of the rape, the complainant regularly saw a therapist and experienced marital problems. Further, she is fearful of working at night and relinquished her duties on the night shift, which resulted in a substantial pay cut. We hold that these manifestations of emotional trauma are sufficient to allow a rational trier of fact to find the element of "mental anguish" beyond a reasonable doubt.

Defendant also argues that the jury was incorrectly instructed as to the "mental anguish" element of personal injury. The trial court instructed the jury that:

"Mental anguish means any *significant* degree of mental distress which has occurred as a result of the alleged incident."

Defendant contends that the correct definition of mental anguish persuant to *People v Simpson,* 132 Mich App 259, 265; 347 NW2d 215 (1984), *rev'd* 424 Mich 221; 380 NW2d 11 (1986), is that mental anguish must be extreme or serious, which is defined as "any significant degree of mental distress greater than that normally attendant to criminal sexual assaults accomplished by force or coercion."

Defendant's argument is without merit. *People v Simpson, supra,* was reversed in the same decision

as *People v Petrella, supra.* Moreover, the Supreme Court expressly disapproved of the above quoted language. We note that under *People v Petrella, supra,* the instruction that was given by the trial court was erroneous, but we conclude that the error did not prejudice the defendant. We have reviewed the evidence in a light most favorable to the prosecution and determine that a rational trier of fact could find the element of mental anguish as defined in *People v Petrella, supra,* beyond a reasonable doubt.

## II

Defendant's second argument is that his two convictions violate his right against double jeopardy. We disagree.

Both the federal[1] and Michigan[2] constitutions protect against multiple prosecutions and multiple punishments for the same offense. "The double jeopardy prohibition does *not* operate to bar the prosecution of two dissimilar offenses that occur at different times." *People v Richard Johnson,* 94 Mich App 388, 391; 288 NW2d 436 (1979). See also *People v Noth,* 33 Mich App 18; 189 NW2d 779 (1971). There is no violation based on double prosecution if one crime is complete before the other takes place, even if the offenses share common elements or one constitutes a lesser offense of the other. *People v Johnson, supra; People v Jones,* 75 Mich App 261, 270-271; 254 NW2d 863 (1972).

In the case at bar, the defendant was tried and convicted of assault with intent to commit criminal sexual conduct involving penetration on the basis of the acts which occurred during the car chase which resulted in the complainant's loss of

---

[1] US Const, Am V and Am XIV.
[2] Const 1963, art 1, § 15.

control of her car. The series of events arising after complainant's car came to rest was the basis of defendant's conviction for criminal sexual conduct in the first degree.

Unlike the first-degree criminal sexual conduct offense, the assault offense requires proof of specific intent. *People v Love,* 91 Mich App 495; 283 NW2d 781 (1979). While defendant's intent to commit sexual penetration was not verbalized until he began the second assault on the complainant, the jury could have found that the intent was manifested prior to that time although its true purpose was not yet evident. Therefore, we conclude that the first assault involving the vehicles was completed before the criminal sexual conduct offense began. Since each offense occurred separately, defendant was not subject to double jeopardy.

Defendant also argues that the information was defective because he was charged under MCL 750.87; MSA 28.282, the general assault with intent to commit a felony statute, and not under the specific statute, assault with intent to commit criminal sexual conduct involving penetration. MCL 750.520g(1); MSA 28.788(7)(1). This issue was not raised below.

An information cannot be challenged for the first time on appeal absent a miscarriage of justice. *People v Hernandez,* 80 Mich App 465, 467-469; 264 NW2d 343 (1978), *lv den.* 406 Mich 938 (1979); MCL 769.26; MSA 28.1096.

In the instant case, defendant does not allege that he did not know what felony the assault charge was based on. Moreover, the crimes under both statutes are punishable by not more than ten years imprisonment. Therefore, we find no miscarriage of justice and will not review the issue further.

### III

At trial, it was established that a piece of plastic found at the scene of the crimes fit into a hole in the parking light of defendant's car. Laboratory tests also confirmed that the plastic came from defendant's car. Defendant now argues that the trial court erred in admitting this evidence at trial. Defendant claims that the parking light was seized pursuant to a consent form which defendant was coerced into signing by a threat which implied that a serach was inevitable. See *United States v Boukater,* 409 F2d 537, 538 (CA 5, 1969); *United States v Faruolo,* 506 F2d 490, 493-494 (CA 2, 1974); *United States v Agosto,* 502 F2d 612, 614 (CA 9, 1974).

From the record it is apparent that defendant twice consented in writing to have his car searched. The first time was on December 16, 1983, when defendant accompanied Detective Stephen McGuire to the police station for questioning and the car was towed to the police station. Between December 16 and December 19, 1983, Officer McGuire inspected defendant's car to see if a plastic car part found at the scene of the crimes could have come from defendant's car. The piece of plastic fit into a hole in the parking light. The officer then amended the consent form to include "other parts being necessary for investigative purposes". Defendant signed this amended form, which we refer to as the "second consent". Pursuant to an evidentiary hearing, the trial court ruled that the second consent was knowingly, voluntarily and intelligently made and denied suppression of this evidence.

In *People v Brown,* 127 Mich App 436, 440-441; 339 NW2d 38 (1983), *lv den* 419 Mich 896 (1984), this Court summarized the law concerning consensual searches:

"Individuals are constitutionally protected from being subjected to unreasonable searches and seizures. All evidence obtained in violation of this protection is inadmissible in a state court. A warrantless search and seizure is per se unreasonable unless shown to fall within one of the various exceptions to the warrant requirement. Consent is one such exception. When consent is alleged, the burden is on the prosecution to prove by clear and positive evidence that the consent was unequivocal and specific, freely and intelligently given. Whether a consent is valid is a question of fact to be decided upon the evidence and all reasonable inferences drawn from it. The totality of the circumstances must be examined. The prosecution need not demonstrate that the defendant had knowledge of the right to refuse to allow the search. Rather, such knowledge is but one factor to be considered in a suppression hearing. Conduct itself can, under proper circumstances, be sufficient to constitute consent.

"A trial court's conclusion following a suppression hearing will not be overturned unless that conclusion is found to be clearly erroneous. * * * A ruling is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made." (Citations omitted.)

Applying this standard to the instant case, we do not find that the court clearly erred in denying defendant's motion to suppress.

Officer McGuire testified that defendant appeared to consent to the second search. The consent form expressly printed the rights defendant was waiving and these rights were read to the defendant. The officer denied threatening that he would strip defendant's car or that there would remain no residual value to the car if defendant did not sign the form.

Office Wheeler, who was also present during the execution of the second consent, corroborated this testimony. Wheeler testified that at first defendant agreed to sign the consent form, changed his mind,

then changed his mind again to sign the form. The
last change was influenced by McGuire's indication
that if defendant did not sign the form, McGuire
would proceed to get a search warrant. McGuire
said the consent was just to expedite the search.

Defendant testified that he was in jail and had
just been awakened from sleep to sign the
amended form. He claimed that he did not really
understand the form and was sleepy and not prop-
erly functioning. At the time, defendant had not
had the opportunity to speak with an attorney.
Defendant testified:

"When I read the additional parts where it says
'other parts as deemed necessary for investigative pur-
pose,' I asked him, 'What's that mean?' And he [Officer
McGuire] says, 'It means I can take any parts off your
car I want.'

"I said, 'Then you can strip my car so it's worth
nothing to me if I have to sell it to pay for lawyer fees?'
And he [Officer McGuire] says, 'If you don't sign it, I'll
go to the magistrate, get a search warrant through him
and I will strip your car and it will be worth nothing.' "

After McGuire's response, defendant signed the
consent form. On cross-examination, defendant
was asked:

"*Q.* Did you understand that you had a constitutional
right to refuse to allow a search without a valid search
warrant?

"*A.* I had nothing to hide so I signed it."

Defendant claimed that the officer had him put
December 19 on the form although the actual date
was December 17. Defendant admitted that, al-
though he had not carefully read the waiver lan-
guage the second time, he had read it on Decem-
ber 16. Defendant further conceded that he agreed

to allow the police to take photographs and paint samples or anything else on the outside of the vehicle, but that his only objection concerned evidence obtained from the interior of the vehicle.

Under these facts, the trial court held that the second consent was knowingly and voluntarily given. The trial court recognized its duty to determine credibility and found defendant's testimony to be unworthy of belief. It was the trial court's opinion that this issue only became of significance to defense counsel when he learned from the prosecutor's opening statement about the testimony of the lab expert. This observation, combined with the fact that defendant admitted he had no objection to evidence seized from outside the car, persuades us that the trial court's determination of credibility should not be overturned.

## IV

Defendant's final contention is that the admission of testimony concerning blood typing and glass and paint comparisons was error. Defendant does not challenge the admission of this evidence on the basis that it was obtained through a scientifically unreliable method. See *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955); *Frye v United States,* 54 US App DC 46, 47; 293 F 1013 (1923). Rather, defendant objects to the admission of this evidence because the inconclusive results allegedly led to speculation and therefore prejudiced defendant's case.

To support his contention, defendant relies upon the reasoning of *People v Sturdivant,* 91 Mich App 128, 131, 134; 283 NW2d 669 (1979), *lv den* 407 Mich 933 (1979), wherein this Court held that

blood-typing evidence showing that the accused was included within a class of possible defendants without connecting him in any way to the charged offense had no probative value and its admission was error. We note that several subsequent decisions of this Court conflict with *Sturdivant's* holding and would admit such evidence to show possible connections between a defendant and the criminal act. See *People v Horton,* 99 Mich App 40; 297 NW2d 857 (1980), *vacated and remanded on other grounds* 410 Mich 865; 301 NW2d 775 (1980); *People v White,* 102 Mich App 156; 301 NW2d 837 (1980); *People v Goree,* 132 Mich App 693; 349 NW2d 220 (1984); *People v Camon,* 110 Mich App 474; 313 NW2d 322 (1981), *lv den* 414 Mich 859 (1982); *People v Eaton,* 114 Mich App 330; 319 NW2d 344 (1982), *lv den* 417 Mich 929 (1983); *People v Traylor,* 145 Mich App 148; 377 NW2d 371 (1985).

We further note that the viability of *Sturdivant's* position is dependent upon the Supreme Court's ultimate decision in *People v Young,* 418 Mich 1; 340 NW2d 805 (1983), which at the time of this writing is yet forthcoming.

In the present case, we conclude that, even if the admission of this testimony was error, it was harmless beyond a reasonable doubt. It is clear from the record that defendant was convicted upon the strength of the complainant's identification of both defendant and his vehicle, identifications which were supported by the testimony that a piece of plastic found on the scene conclusively came from the parking light of defendant's car. This evidence, if believed, was sufficient evidence to convict. Therefore, this issue does not compel reversal.

Affirmed.