# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

FRED HUSTON-DARNELL CHANDLER,

Defendant-Appellant.

UNPUBLISHED
August 21, 2018

No. 333207
Muskegon Circuit Court
LC No. 15-066436-FH

ON REMAND

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

This case returns to this Court on remand from our Supreme Court with instructions to reconsider whether the trial court erred by admitting other-acts evidence under MRE 404(b) to prove identity. We conclude that the trial court did not err by admitting the evidence and affirm defendant's convictions.

## I. BACKGROUND

The facts underlying this matter were set forth in detail in our prior opinion and, on the majority of issues, need not be recalled at length. See *People v Chandler*, unpublished opinion per curiam of the Court of Appeals, issued August 22, 2017 (Docket No. 333207). During the early evening hours on May 6, 2015, a back-door alarm went off at a Muskegon Dollar General. Carol Schab was working at the Dollar General at that time, but did not witness the event triggering the alarm. After another employee told her about the alarm, Schab investigated by talking to people present in the store's back alley. According to Schab, a person present in the back alley witnessed a man matching defendant's description leave the store through the back door carrying garbage bags. The employee did a quick inventory of the store, determined that several items were missing, and called 911.

Muskegon Police Officer Charles Anderson was only four blocks away from the store at the time and responded quickly to the call. Officer Anderson drove up the back alley and noticed a man matching the description of the suspected thief walking around to the car's driver's side. Officer Anderson parked his police cruiser in front of the Cadillac and the suspect entered the Cadillac. Officer Anderson exited the cruiser and walked up to the Cadillac, all the time viewing the suspect through the rolled-down driver's side window. Officer Anderson asked the suspect

-1-

whether he had been in the store, to which the suspect responded that he had not. Officer Anderson, however, noticed trash bags in the backseat of the Cadillac and continued his questioning. Officer Anderson testified that he asked the suspect to step out of the car, but the suspect refused. The suspect then told Officer Anderson that he was going to back up the Cadillac and Officer Anderson instructed the suspect not to. The suspect continued to back up the Cadillac and then took off. Officer Anderson returned to his cruiser and followed the suspect. The chase proceeded through mostly residential streets at increasingly high speeds. Dash-camera footage admitted at trial showed that the suspect reached a top speed of 73 mph on a 25 mph street. Officer Anderson continued to follow the suspect until he was ordered to terminate the pursuit in light of the danger it posed to residents.

Defendant was eventually arrested. At trial, Officer Anderson identified defendant as the suspect driving the Cadillac. In addition, portions of the surveillance footage from the Dollar General were played for the jury, and Office Anderson testified that he recognized defendant in the surveillance video as the suspect driving the Cadillac. The parties also stipulated to the admission of the Cadillac's registration, which showed that the vehicle was registered to defendant.

The prosecution also presented other-acts evidence under MRE 404(B) regarding the circumstances surrounding a retail fraud defendant committed in 2011. The prosecution called Robert Ieziak, a store detective for a Plumbs store in Roosevelt Park. Ieziak testified that he was involved in an incident with a person named Fred Chandler and recalled that he was doing surveillance when saw the person concealing merchandise on his person and then exit the Plumbs store. Ieziak confronted the person and told him that the merchandise needed to be returned. The person stated that he was sick and had to go. The person left the store and got into a large van and drove off erratically at a high speed. Ieziak called 911, and the police arrived and gave chase.

Roosevelt Park Police Department Officer Aaron Morse testified that on January 28, 2011, he was dispatched to the Plumb's store where he observed a person drive a white van out of the store's parking lot at a high rate of speed. Officer Morse pursued the suspect, who drove primarily through residential streets at high speeds despite the icy conditions that day. At one point, the suspect reached 50 mph in a 35 mph zone. The suspect took a corner too fast for the icy road conditions and went over a road sign and crashed in a yard. The suspect then fled on foot, but Officer Morse caught up with the suspect and took him into custody.

Neither Ieziak nor Officer Morse could identify defendant at trial. Both men, however, recalled that the earlier encounter involved a person named Fred Chandler. Given defendant's conviction for robbing the Plumb's store on the date in question, as noted in defendant's warrant, and the fact that defendant's name is, in fact, Fred Chandler, the record made clear that defendant was the suspect involved in this earlier crime. Indeed, before the trial court, and on appeal, defendant has not argued that he was not the suspect in the 2011 retail fraud and subsequent pursuit.

The trial court admitted the other-acts evidence under MRE 404(b) as evidence of defendant's identification, lack of mistake, motive, and scheme, plan, or system of fleeing and eluding police during his commission of retail fraud. After the close of proofs, the jury

deliberated and found defendant guilty of third-degree fleeing an officer in violation of MCL 257.602a(3), for which the trial court imposed a sentence of 18 months to 10 years of imprisonment.

On appeal before this panel, defendant argued that the admission of other-acts evidence was error. We concluded, "Review of the trial court record establishes that the trial court correctly applied the *Huddleston*[1] test and its decision to admit other acts evidence under MRE 404(b) was not an abuse of its discretion." *Chandler*, unpub op at 8. We found the remainder of defendant's issues to be without merit and affirmed his conviction. *Id*. at 11.

Defendant then sought leave to appeal our ruling to the Supreme Court. In lieu of granting leave to appeal, the Supreme Court issued an order stating:

> [W]e VACATE that part of the Court of Appeals judgment addressing the admission of other-acts evidence and we REMAND this case to that court for reconsideration in light of *People v Denson*, 500 Mich 385 (2017), and *People v Golochowicz*, 413 Mich 298, 310-311 (1982). The prosecutor sought to admit the other-acts evidence to prove identity. "*Golochowicz* identifies the requirements of logical relevance when the proponent is utilizing a modus operandi theory to prove identity." *People v VanderVliet*, 444 Mich 52, 66 (1993). On remand, the Court of Appeals shall apply *Golochowicz* to determine whether the other-acts evidence was admissible to prove identity. The Court of Appeals shall consider whether the defendant's other act and the charged offense were sufficiently similar to support this theory of relevance. See *Denson*, 500 Mich at 402-404. In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court. [*People v Chandler*, ___ Mich ___; ___ NW2d ___ (Docket No. 156620, decided June 27, 2018).]

Now on remand and reviewing the evidence under the more-stringent *Golochowicz* standard, we remain unable to conclude that the trial court abused its discretion by admitting the other-acts evidence. Moreover, even assuming arguendo that the evidence should have been excluded, its inclusion was harmless. Therefore, we affirm defendant's conviction.

## II. ANALYSIS

As noted in our previous opinion, the admission of other-acts evidence is controlled by MRE 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or

---

[1] *Huddleston v United States*, 485 US 681, 691-692; 108 S Ct 1496; 99 L Ed 2d 771 (1988).

absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Absent questions of statutory interpretation, which are not present here, we review "a trial court's determination of evidentiary issues for an abuse of discretion." *People v Smith*, 456 Mich 543, 549; 581 NW2d 654 (1998). An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "The decision upon a close evidentiary question by definition ordinarily cannot be an abuse of discretion." *Golochowicz*, 413 Mich at 322.

When other-acts evidence is admitted to prove identity, "*Golochowicz* identifies the requirements of logical relevance when the proponent is utilizing a modus operandi theory to prove identity" as the prosecutor did in this case. *People v VanderVliet*, 444 Mich 52, 66; 508 NW2d 114 (1993). To be admissible under the *Golochowicz* standard, four requirements must be met:

> "(1) there is substantial evidence that the defendant committed the similar act (2) there is some special quality of the act that tends to prove the defendant's identity (3) the evidence is material to the defendant's guilt, and (4) the probative value of the evidence sought to be introduced is not substantially outweighed by the danger of unfair prejudice. [*People v Waclawski*, 286 Mich App 634, 673; 780 NW2d 321 (2009) (cleaned up)[2].]

Analyzing the other-acts evidence's logical relevance under the *Golochowicz* standard, we conclude that the trial court did not abuse its discretion by admitting the evidence.

With regard to the first *Golochowicz* requirement, there is no question that substantial evidence exists that defendant committed the prior act. Defendant makes no argument that he did not commit the prior act. Indeed, the prior act was part of a series of events that led to a criminal conviction, which is noted in the record. See *People v Perry*, 172 Mich App 609, 619; 432 NW2d 377 (1988). The third requirement is also easily satisfied. "Materiality is the requirement that the other-acts evidence be related to any fact that is of consequence to the action. In other words, is the fact to be proven truly in issue?" *People v Denson*, 500 Mich 385, 401; 902 NW2d 306 (2017) (cleaned up). In this case, the pursuit was called off and defendant was not immediately apprehended. At trial, he argued that he was not the person that fled the Dollar General, thereby making identity a material issue at trial. *People v Lee*, 434 Mich 59, 95; 450 NW2d 883 (1990).

---

[2] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that non-substantive clutter such as brackets, internal quotation marks, alterations, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

The second *Golochowicz* requirement presents the closest question. As explained in *Golochowicz*, 413 Mich at 310, where the other-acts evidence is offered to prove identity, "the link is forged with sufficient strength to justify admission of evidence of the separate offense only where the circumstances and manner in which the two crimes were committed are so nearly identical in method as to earmark the charged offense as the handiwork of the accused." (Cleaned up). "The commonality of circumstances must be so unusual and distinctive as to be like a signature" and "much more is demanded than the mere repeated commission of crimes of the same class." *Id*. at 310-311 (cleaned up). The "manners or systems employed by the perpetrator of the uncharged crime and the crime in question" must involve "such distinctive, unique, peculiar or special characteristics as to justify an ordinarily reasonable juror to infer that both were the handiwork of the same person." *Id*. at 312.

Looking first to the similarities between the prior act and the instant offense, two factors weigh against a finding that the two acts were sufficiently similar, such that they should be admitted as evidence of defendant's identity. First, the prior offense occurred in 2011, four years removed from the instant offense. An inverse relationship exists between the age of the other-acts evidence and its logical relevance. See *Denson*, 500 Mich at 407 n 11 (noting that, although there is no time limit for the admission of other-acts evidence, remoteness in time between the prior act and the charged act will limit the logical relevance of the other-acts evidence). While the four-year time span does adversely impact the logical relevance of the other-acts evidence, we do not find that this consideration is sufficient, on its own, to render the evidence inadmissible, especially considering defendant was not discharged from prison for the earlier offense until June 2014. The second factor is relatively minor, and easily explained. In the prior act, defendant fled the scene in a white van, while the instant offense involves the suspect fleeing the scene in a black Cadillac (which was registered to defendant). In the prior incident, however, defendant totaled the white van, rendering it unavailable for the instant offense.

The remaining factors weigh in favor of a finding of similarity. In both instances the suspect robbed a small, local business. In both instances, the suspect was confronted about the shoplifting and instructed to stay put or return the items. Both times, the suspect acted as if he had not heard the instructions, telling the security guard in the prior instance that he was sick and needed to go and the police officer in the instant case that he was just backing up his vehicle. Then, in both circumstances, the suspect fled the scene in his vehicle, driving down residential streets at exceedingly high speeds.

Thus, we conclude that the peculiarities of defendant's conduct in each circumstance are sufficiently similar to each other and sufficiently atypical as compared to the general class of offenses to earmark the charged offense as defendant's handiwork. Accordingly, the other-acts evidence passes the second *Golochowicz* requirement. Moreover, even if we had concluded otherwise, as we have already noted, "the decision upon a close evidentiary question by definition ordinarily cannot be an abuse of discretion." *Golochowicz*, 413 Mich at 322 (cleaned up). Thus, given the closeness of this question, we would still be unable to conclude that the trial court abused its discretion by finding that the evidence logically tended to prove defendant's identity.

Finally, with regard to the prejudicial effect of the evidence, "unfair prejudice occurs when there is a tendency that the evidence will be given undue or preemptive weight by the jury,

or when it would be inequitable to allow use of the evidence." *Waclawski*, 286 Mich App at 672 (cleaned up). Here, the other-acts evidence pertained to defendant's prior shoplifting and flight from police. Unlike the other-acts evidence in *Golochowicz*, 413 Mich at 305-307, 327, which pertained to a prior violent murder, the other-acts evidence in this case was relatively mundane, meaning that it was not the type of evidence that would generally inflame the passions of reasonable jurors. See *People v Brown*, 137 Mich App 396, 406; 358 NW2d 592 (1984). Moreover, the jury was properly instructed under M Crim JI 4.11 that the other-acts evidence was not to be used for propensity purposes. Because jurors are presumed to follow their instructions, this instruction alleviates the risk of any unfair prejudice to defendant. *Waclawski*, 286 Mich App at 674. Thus, given the distinctiveness of defendant's conduct and the minimal prejudice this evidence presented—outside of the prejudice inherent to any adverse admission of evidence—we conclude that the probative value of the evidence was not outweighed by the risk of unfair prejudice, even given the other identity evidence available, see *Golochowicz*, 413 Mich at 325; *People v Smith*, 243 Mich App 657, 674-675; 625 NW2d 46 (2000).

*Harmless Error.* Finally, even if the other-acts evidence had been admitted erroneously, the error would be harmless. In the context of other-acts evidence, "a preserved nonconstitutional error is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *Denson*, 500 Mich at 409 (cleaned up). In determining whether an error was outcome determinative, this Court focuses on the nature of the error "in light of the weight and strength of the untainted evidence." *Id*. at 409-410 (cleaned up).

Here, there was abundant other evidence from which the jury could reasonably conclude that defendant was the suspect who fled the Dollar General. First, Officer Anderson positively identified defendant at trial as the suspect. Officer Anderson's identification of defendant was based on his personal interaction with defendant during the commission of the crime, during which Officer Anderson had a clear view of defendant. This evidence alone would be sufficient to convict defendant of fleeing and eluding a police officer. Second, the record showed that the black Cadillac involved in the offense was registered to defendant. Finally, consistent with the testimony presented at trial, the Dollar General surveillance footage clearly showed defendant leaving the store with several garbage bags. Thus, the footage placed defendant at the scene of the offense, linked him to the black Cadillac in which Officer Anderson viewed the garbage bags, and indicated defendant's motive for fleeing, i.e., to escape punishment for retail fraud. Accordingly, we conclude that it was not more probable than not that the outcome would have been different had the other-acts evidence not been introduced. See *Smith*, 243 Mich App at 680-681.

Affirmed.

/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle