*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

VERNEST JAMES GRIFFIN,

        Defendant-Appellant.

UNPUBLISHED
October 22, 2020

No. 348864
Wayne Circuit Court
LC No. 18-003013-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

VERNEST JAMES GRIFFIN,

        Defendant-Appellant.

No. 348871
Wayne Circuit Court
LC No. 18-000028-01-FH

---

Before: SWARTZLE, P.J., and JANSEN and BORRELLO, JJ.

PER CURIAM.

A jury convicted defendant of seven total charges, arising from two cases that were consolidated for trial. In Docket No. 348864, the jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a), carjacking, MCL 750.529a, armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of life without parole for the murder conviction and 45 to 75 each for the carjacking and robbery convictions, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. In Docket No. 348871, the jury convicted defendant of felonious assault, MCL 750.82, felony-firearm, and brandishing a firearm in public, MCL 750.234e. The trial court sentenced defendant to 32 to 48 months imprisonment for the assault conviction, 90 days in jail (time served) for the brandishing a firearm conviction, and a consecutive two-year term of imprisonment felony-firearm conviction. Defendant appeals as of right in each case. We affirm.

# I. FACTUAL BACKGROUND

Defendant's convictions arise from two separate criminal episodes that occurred at the office of defendant's former employer, B.S.D. Line Haul Trucking Company in Taylor, the first in November 2017 and the second in February 2018. Defendant's convictions in Docket No. 348871 arise from his conduct on November 24, 2017, when he showed up at the company's office brandishing a firearm and pointed it at Justin Haaga, the owner of the company, after defendant voiced dissatisfaction with the amount of his final paycheck. An employee called 911, the police arrived, and defendant was arrested. In Docket No. 348864, the prosecutor presented evidence that on February 1, 2018, defendant returned to the company's office, fatally shot Keith Kitchen, a company dispatcher, and then commandeered a company truck from another employee at gunpoint and left the premises.

The prosecution also presented other-acts evidence of defendant's conduct after leaving the trucking company office on February 1. Specifically, defendant drove to the shipping and receiving area of another company in Pontiac, with which he had prior contact, and fatally shot an employee there. He then drove to a Waterford company where he had previously worked in search of his former manager. At trial, the defense argued that there was insufficient evidence to support the charged offenses, particularly the premeditation element of the murder charge. However, this argument was unavailing, as defendant was convicted and sentenced as noted *supra*. This appeal followed.

# II. ADMISSION OF EVIDENCE

Defendant first argues that the trial court abused its discretion by admitting the other-acts evidence regarding defendant's alleged conduct in Oakland County on February 1, 2018. Defendant argues that this evidence was inadmissible under MRE 404(b)(1). We disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *Id*. at 252 (quotation marks and citation omitted.) "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*. "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo[.]" *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

"At its essence, MRE 404(b) is a rule of inclusion, allowing relevant other acts evidence as long as it is not being admitted solely to demonstrate criminal propensity." *People v Martzke*, 251 Mich App 282, 289; 651 NW2d 490 (2002); see also *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010) ("the rule is not exclusionary, but is inclusionary"). Although MRE 404(b)(1) prohibits "evidence of other crimes, wrongs, or acts" to prove a defendant's character or propensity to commit the charged crime, it permits such evidence for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material." *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). Other-acts evidence is admissible under MRE

404(b)(1) if it is (1) offered for a proper purpose, i.e., one other than to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, MRE 401, and (3) sufficiently probative to outweigh the danger of unfair prejudice, under MRE 403. *People v Starr*, 457 Mich 490, 496-497; 577 NW2d 673 (1998); *People v VanderVliet*, 444 Mich 52, 55, 63-64, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Further, although MRE 404(b)(1) provides examples of permissible uses of other-acts evidence, the list is not exhaustive. *People v Watson*, 245 Mich App 572, 576-577; 629 NW2d 411 (2001). The rule permits the admission of evidence of a defendant's [other]acts for any relevant purpose that "does not risk impermissible inferences of character to conduct." *Id*. at 576 (citation omitted).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011). In this case, the challenged evidence was relevant to show defendant's intent, plan, and motive to kill Kitchen, given that the other-acts evidence supported the prosecution's theory that defendant had a premeditated and deliberate plan to seek revenge on persons he knew in a work-related context and had grievances against on February 1, 2018. After fatally shooting Kitchen at the trucking company in Taylor, defendant used the truck that he carjacked from that location to directly drive to a company in Pontiac, where he fatally shot an employee there, and then drove to a third company, where he searched for his former manager while carrying a gun. This evidence was relevant to the prosecution's theory that defendant formed a plan on February 1 to seek revenge against former employers or coworkers with whom he had disagreements by shooting them, and thus acted with premeditation and deliberation when he went to the trucking company with a weapon that day and shot Kitchen. First-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate, *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2001), and "the defendant's conduct after the homicide" is a factor that may be considered to establish premeditation. *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008). The evidence of defendant's similar conduct immediately after shooting Kitchen was probative of his intent at the time he shot Kitchen, and thus was relevant for a proper, noncharacter purpose.

We likewise reject defendant's argument that the evidence should have been excluded under MRE 403 because it was unfairly prejudicial. Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Cameron*, 291 Mich App at 610 (citation omitted). Under the balancing test of MRE 403, a court must first decide if the other-acts evidence was unfairly prejudicial, and then " 'weigh the probativeness or relevance of the evidence' against the unfair prejudice" to determine whether any prejudicial effect substantially outweighed the probative value of the evidence. *Id*. at 611 (citation omitted). Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." MRE 403 is not, however, intended to exclude "damaging" evidence, because any relevant evidence will be damaging to some extent. *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995); *People v McGuffey*, 251 Mich App 155, 163; 649 NW2d 801 (2002). In the second situation, the unfair prejudice language "refers to the tendency of the proposed evidence to adversely affect the objecting party's position

by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App 611 (citation omitted).

The trial court in this case weighed the probative value of the other-acts evidence against its potential to cause unfair prejudice to determine whether the jury would be able to rationally weigh the evidence and consider it for its proper purpose. Defendant's defense—specifically, that the evidence was insufficient to prove that he acted with premeditation and deliberation— enhanced the probative value of the evidence, which tended to shed light on the likelihood that defendant went to the B.S.D. office on February 1 with a premeditated plan to shoot and kill Kitchen. Moreover, the trial court twice gave a cautionary instruction to the jury, before the introduction of the other-acts evidence and in its final instructions, explaining the limited, proper use of the evidence, thereby limiting any potential for unfair prejudice. It is well established that jurors are presumed to have followed their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). The trial court did not abuse its discretion by determining that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

## III. MOTION TO CHANGE VENUE

Second, defendant argues that the trial court abused its discretion by denying his motion to change venue because of pretrial publicity. Again, we disagree.

We review the denial of a motion for change of venue for an abuse of discretion. *People v Jendrzejewski*, 455 Mich 495, 500; 566 NW2d 530 (1997). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013).

As a general rule, a defendant must be tried in the county where the crime is committed. MCL 600.8312; *Unger*, 278 Mich App at 253. A trial court may change venue to another county when special circumstances demonstrate good cause to believe it is in the interests of justice to do so. MCL 762.7; *Unger*, 278 Mich App at 253-254 n 12. Pretrial publicity, standing alone, is insufficient to justify a change of venue. *Jendrzejewski*, 455 Mich at 502. But "it may be appropriate to change venue of a criminal trial when widespread media coverage and community interest have led to actual prejudice against the defendant." *Unger*, 278 Mich App at 254. This type of actual prejudice "has been found where there was extensive highly inflammatory pretrial publicity that saturated the community to such an extent that the entire jury pool was tainted, and, much more infrequently, community bias has been implied from a high percentage of the venire who admit to a disqualifying prejudice." *Jendrzejewski*, 445 Mich at 500-501. To determine if a defendant's trial was fundamentally fair, the court must look at the totality of the circumstances. *Id.* at 502. The defendant has the burden to demonstrate that his trial was inundated with adverse publicity or that this publicity resulted in actual bias against the defendant. See *People v Harvey*, 167 Mich App 734, 741-742; 423 NW2d 335 (1988).

In this case, the trial court observed that there had been some pretrial publicity. However, to justify a change of venue, the pretrial publicity must involve such "unrelenting prejudicial pretrial publicity [that] the entire community will be presumed both exposed to the publicity and prejudiced by it." *Jendrzejewski*, 445 Mich at 501 (citation omitted). A court must also distinguish between largely factual publicity and that which is invidious or inflammatory. *Id.* at 504. The

trial court found that the news reports had "been factual as opposed to prejudicial." Defendant did not show that the coverage was anything other than non-sensational, factual coverage. There was no showing of media reports that amounted to "a barrage of inflammatory publicity" that resulted in prejudice against defendant. *Id*. at 506-507; see also *People v DeLisle*, 202 Mich App 658, 668; 509 NW2d 885 (1993). Defendant failed to establish that pretrial publicity so saturated the community that the entire jury pool was tainted.

Indeed, during voir dire, the trial court inquired about the venire's exposure to pretrial publicity about this case, and some prospective jurors were at least somewhat familiar with the facts of the case. However, "[c]onsideration of the quality and quantum of pretrial publicity, standing alone, is not sufficient to require a change of venue. The reviewing court must also closely examine the entire voir dire to determine if an impartial jury was impaneled." *Jendrzejewski*, 445 Mich at 517. In this case, the trial court questioned each prospective juror about his or her exposure to the case. As defense counsel observed in the lower court, very few prospective jurors indicated that they had been exposed to pretrial publicity. For those prospective jurors who indicated that they had heard or read about the case, the trial court questioned whether they could be fair and impartial to defendant and the prosecutor, and the court also allowed the attorneys to ask any questions about the effect of any pretrial publicity, without restrictions. Ultimately, only one juror who indicated having been exposed to pretrial publicity was selected to sit on defendant's jury. That juror indicated that he "recall[ed] seeing it in an article once upon a time" but "[d]idn't pay much attention to it." He assured the court that he would be able to judge defendant's case fairly and impartially, notwithstanding any exposure to media reports about the case. "[W]here potential jurors can swear that they will put aside preexisting knowledge and opinions about the case, neither will be a ground for reversing a denial of a motion for a change of venue." *DeLisle*, 202 Mich App at 662. Indeed, "[t]he value protected by the Fourteenth Amendment is lack of partiality, not an empty mind." *Jendrzejewski*, 445 Mich at 519.

In sum, defendant demonstrated, at most, that this case generated some publicity in the local press, but the record does not show that the publicity regarding the case created or reflected community bias against defendant. There is nothing to suggest that the media reporting exposed the venire to extensive, sensational, or prejudicial information. The one juror selected to sit on defendant's jury who recalled reading an article about the case assured the court that he could set aside that information and decide the case on the basis of the evidence introduced at trial. Moreover, not only did the trial court question the prospective jurors about their exposure to any pretrial publicity, it also allowed defense counsel the opportunity to question the jurors, without restriction. On this record, under the totality of the circumstances, the trial court did not abuse its discretion by denying defendant's motion to change venue.

## IV. SELF-REPRESENTATION DURING PRETRIAL PROCEEDINGS

Finally, defendant argues that the trial court erred by permitting him to represent himself during pretrial proceedings. We disagree.

To properly preserve an issue for appeal, a defendant must timely object in the trial court, even if the right asserted is constitutional in nature. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999). Defendant did not challenge the validity of his waiver of counsel at any pretrial proceeding or in an appropriate motion in the trial court at any time before trial,

leaving this issue unpreserved. We therefore review this unpreserved constitutional claim for plain error affecting defendant's substantial rights. *Id*. at 762-763.

The Sixth Amendment of the United States Constitution explicitly guarantees a defendant in a criminal case the right to the assistance of counsel and implicitly guarantees the right of self-representation. US Const, Am VI; *Faretta v California*, 422 US 806, 818-832; 95 S Ct 2525; 45 L Ed 2d 562 (1975). Any waiver of the right to counsel must be knowingly, voluntarily, and intelligently made by the defendant. *People v Russell*, 471 Mich 182, 188; 684 NW2d 745 (2004). Courts make every presumption against the waiver. *Id*. A trial court's factual findings about a waiver are reviewed for clear error. *Id*. at 187.

When confronted with a defendant's initial request for self-representation, a trial court must determine, under standards established in *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976), that

> (1) the defendant's request is unequivocal, (2) the defendant is asserting the right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business. [*Russell*, 471 Mich at 190.]

A trial court must also satisfy the requirements of MCR 6.005(D). *Russell*, 471 Mich at 190. This court rule provides that a court may not permit the defendant's initial waiver of the right to counsel without:

> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

But a trial court need not follow a "litany approach" to establish compliance with the requirements of *Anderson* and MCR 6.005(D). See *Russell*, 471 Mich at 191. It is sufficient that the court substantially comply with the substantive requirements. *Id*. "The nonformalistic nature of a substantial compliance rule affords the protection of a strict compliance rule with far less of the problems associated with requiring courts to engage in a word-for-word litany approach." *People v Adkins (After Remand)*, 452 Mich 702, 727; 551 NW2d 108 (1996), overruled in part on other grounds in *People v Williams*, 470 Mich 634, 641 n 7; 683 NW2d 597 (2004). While the trial court must be certain that the requirements for a proper waiver are met, superficial irregularities will not give rise to an "appellate parachute." *Russell*, 471 Mich at 191.

This case involves defendant's self-representation only during pretrial proceedings. Defendant concedes that the trial court satisfied the first two requirements established by *Anderson*, 398 Mich at 367, as well as the requirements of MCR 6.005(D). Defendant challenges only the third *Anderson* requirement, i.e., whether defendant's self-representation would disrupt, unduly inconvenience, and burden the court and the administration of the court's business. *Russell*, 471 Mich at 190.

The trial court engaged in an explicit and methodical colloquy with defendant about his wish to represent himself, which included discussions about his educational level (three years of college) and the dangers of self-representation. Although the potential for undue disruptions existed because of defendant's lack of legal training, the record clearly establishes that the trial court adequately accounted for this factor by requiring defendant to comply with the rules and procedures of the court, and informing defendant that the court would not "cut [him] any breaks or give [him] any leniency—or give [him] any breaks or treat [him] any differently than [the court] would treat [appointed defense counsel] simply because [defendant is] representing [him]self." The trial court made an express determination that defendant would not disrupt, unduly inconvenience, or burden the court and the administration of the court's business. Contrary to what defendant suggests, the mere fact that there were several pretrial hearings does not establish that defendant was unduly disruptive; the trial court addressed the issues that were raised at the hearings. In addition, standby counsel was present and the court freely allowed counsel's input. We conclude that the third *Anderson* requirement was satisfied. Accordingly, defendant is not entitled to appellate relief on the basis of his claim that his waiver of counsel during the pretrial proceedings was ineffective.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Stephen L. Borrello